[No. 19927.  Department One.  June 1, 1926.]

HAZEL R. BRISTOW, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1] MASTER AND SERVANT (20-1) — WORKMEN'S COMPENSATION — INJURIES AT EMPLOYER'S PLANT—IN COURSE OF EMPLOYMENT. An employee who arrives at his place of work and punches the time clock thirty-five minutes before the time for commencing his work is nevertheless an employee from that time, and if he then sustains an injury at the plant from which he dies, his widow is entitled to compensation under the workmen's compensation act.

[2] SAME (20-1). The workmen's compensation act does not require that an employee injured at the plant of his employer receive the injuries in the course of his employment, and if he is drowned at the plant while fishing, the widow is entitled to compensation under the act.

[3] SAME (20-1). A workman, drowned between a dam maintained by his employer for the storage of logs and bulk heads or wings, owned by the employer, came to his death "at the plant" of his employer, entitling his widow to compensation under the workmen's compensation act.

[4] SAME (20-1). The fact that an employee is injured upon a portion of the premises of his employer other than where his labor is performed does not affect his right to compensation under the workmen's compensation act.

BRIDGES, J., dissents.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered November 6, 1925, reversing a decision of the department of labor and industries rejecting a claim for compensation under the workmen's compensation law. Affirmed.

*The Attorney General* and *M. H. Wight, Assistant,* for appellant.

*C. D. Cunningham,* for respondent.

ASKREN, J.—Prior to the 10th day of April, 1925, one Toby Bristow had been employed by the Mutual

[1]Reported in 246 Pac. 573.

Lumber Company at Bucoda, Washington, for approximately two months. His regular hours of work were from 8:00 to 12:00 a. m., and from 1:00 to 5:00 p. m. On that morning, Bristow came to work in his automobile and repaired to the office, where a time clock was kept for the purpose of keeping the time of the employees. Bristow "punched" the clock at 7:25 a. m. He was employed as a "spotter" on the resaw. After punching the clock, he passed along the premises of his employer, going through the portion of the plant where his daily labor was performed, and took a course towards a dam belonging to the company, situated in the river. The dam was located about four hundred feet from the resaw building. On his way, he met two fellow employees, whom he told he was going fishing. Thereafter, he was never seen alive. His body was recovered at a point approximately seventy-five feet below the dam, and out in the river about thirty or forty feet. When the body was recovered, there was found in his pockets some fish line, a gaff hook, and his watch, which was filled with water and had stopped at 7:40.

The widow filed a claim with the department of labor and industries, under the workmen's compensation act. The claim was denied, and appeal was taken to the superior court, where, after trial, in which the evidence disclosed the facts we have just recited, the court reversed the action of the department and gave judgment in favor of the widow.

The department has appealed. It assigns as error two grounds: first, that the decedent, at the time of his death, was not in the employment of any employer; and secondly, that he was not upon the premises of any employer.

Appellant insists that the decedent punched the time clock thirty-five minutes prior to the regular time,

at which he should begin his daily labor, and, while admitting that every employee is entitled to a reasonable length of time, within which to enter upon the plant of his employer and make preparation for the specific thing he is employed to do, contends that, when the decedent arrived thirty-five minutes prior to the scheduled time for beginning his work, and then proceeded to perform a voluntary act for his own benefit, he did not actually surrender himself to the services of his employer, and could not, therefore, become a workman, since he was not then engaged in the employment of an employer.

[1] This question is not without some difficulty. It will not do to lay down a hard and fast rule that an employee who arrives at his place of work thirty-five minutes before the time contemplated to commence the actual labor under his employment is not a workman until the whistle sounds; nor can it be said just how long a time the employee may be permitted upon the plant before the whistle blows. There are many facts and circumstances, which might make the time in one case very unreasonable, while, in another, it would be quite reasonable. In the instant case, the decedent came to his work in an automobile. It is important and necessary that all employees be on time for their various avocations. It is one of the essential qualifications of a good employee. A good employee is always a prompt employee. If the decedent had been delayed by a puncture, blowout, or other minor trouble to his automobile, he might very well have been delayed beyond the usual starting time of the plant. Can it be said, then, as a matter of law, that, having arrived at the plant thirty-five minutes before the usual working time, a time barely sufficient to have repaired a puncture, and then gotten to his place of work before the whistle sounded, that his arrival was so premature

that he should not be considered an employee? We think not. The time card, produced in evidence in this case, shows the time at which the decedent had been reporting for work during the month of April. Therefrom, it appears that the time of arrival ranged from 7:19 to 7:34 a. m., and, in so far as decedent was concerned, shows that it was customary for him to punch the clock at an hour very close to that of the morning in question.

[2]   Appellant argues, however, that the evidence shows that decedent started for the dam to fish, and, therefore, he was not engaged upon the business of his employer, but upon business of his own. While the court did not find that decedent went to the dam to go fishing, yet it may be assumed that the positive evidence of the two witnesses, who talked with him, establishes this as a fact. But that does not bar recovery in this case. The workmen's compensation law does not require that one injured at the plant of his employer must, at the time of his injury, be engaged in the course of his employment. It is only when the injury occurs away from the plant of his employer, that he must be "in the course of his employment." *Stertz v. Industrial Ins. Comm.,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B 354.

The cases cited by appellant, indicating contrary holdings, are based upon statutes which require, as a prerequisite to recovery, that an accident on the premises of the employer must arise "in the course of the employment." Such are: *In re Employers' Liability Assurance Corp.,* 102 N. E. (Mass.) 697; *Bryant v. Fissell,* 84 N. J. Law 72, 86 Atl. 458.

We think it may be safely postulated that, under these decisions, one killed while in the act of fishing, as the decedent was in this case, did not receive the

injury, which caused his death, by means of any accident arising out of, or in the course of his employment. But, as we have seen, our statute does not require that compensation for injury received on the employer's premises arise out of, or in the course of, his employment.

[3]  The next question to be determined is, was the decedent, at the time he met his death, upon the premises of the employer? The evidence showed that the company used the dam in question for the storage of logs; that it was the owner of the property in question, and that below the dam the company had constructed bulkheads or wings, for a distance of approximately ninety to one hundred feet. Decedent's body was recovered within this ninety feet of the river, which contained the wings on either side. This portion of the river and the dam were, therefore, clearly the premises of the lumber company, because it had control thereof. It had a right to construct, repair and alter.

[4]  Appellant contends that the work, which decedent was employed to perform, did not require him to go upon the dam, and that he had no business at that point. But we cannot say that an employee is to be removed from the provisions of the workmen's compensation law because he chooses to go upon another portion of the premises of his employer than that specific part where his labor is performed. In *Carlson v. Mock*, 102 Wash. 557, 173 Pac. 637, we held, that a liberal construction of the workmen's compensation act leads to the conclusion, that the legislature never intended that the term "plant" should "include more than that part of the employer's fixed property over which he has exclusive control." This construction was approved by us in *Zenor v. Spokane & Inland Empire R. Co.*, 109 Wash. 471, 186 Pac. 849. Again, in *Borough v. Davis*, 121 Wash. 557, 210 Pac. 196 and 212

Pac. 1043, the doctrine of both the foregoing cases was approved, and it was held in that case, that a platform belonging to a railroad company, "No matter on whose real estate it was located, was a part of the fixed property of the employer over which, so far as these operations were concerned, the employer had exclusive control. . . ."

The employer, in this case, having full control of the dam and the river, at the point where decedent met his death, the accident took place "upon the premises of the employer."

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, and FULLERTON, JJ., concur.

BRIDGES, J. (dissenting)—I am unable to agree with the assertion that "the workmen's compensation law does not require that one injured at the plant of his employer must, at the time of his injury, be engaged in the course of his employment. It is only when the injury occurs away from the plant of his employer that he must be in the course of his employment."

Section 7679, Rem. Comp. Stat. [P. C. § 3472] says that "each workman who shall be injured whether upon the premises or at the plant, or he being in the course of his employment, away from the plant of his employer, . . ." shall receive compensation out of the fund, and § 7675 [P. C. § 3470] describes a workman as

"Every person in this state, who is engaged in the employment of an employer coming under this act whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer . . ."

It seems to me that one is not a workman, simply because he is on his employer's plant at the time of the injury. If, while on the plant or premises, he is injured while engaged in some employment other than for his employer, then he is not a workman while so engaged.