[No. 21829. *En Banc.* May 27, 1930.]

HAMA HAMA LOGGING COMPANY, *Respondent,* v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant.*[1]

*The Attorney General* and *Harry Ellsworth Foster,*
for appellant.

*Henry T. Ivers* and *R. E. Bigham,* for respondent.

MILLARD, J.—The Hama Hama Logging Company
joined with its employee, Kern Spears, in a proceeding
before the department of labor and industries for the
allowance of the claim of Spears for compensation for
injuries sustained while an employee of the logging
company. The department's rejection of the claim was

[1]Reported in 288 Pac. 655.

acquiesced in by Spears, whose counsel informed the department that:

"This claim was denied by the department of labor and industries upon the ground and for the reason that the accident did not happen in the course of his employment. From my reading of the statute, I agree that the holding of the department upon this matter is correct. I am therefore commencing a common law action against the Hama Hama Logging Company."

From the order of the department rejecting the claim, the logging company appealed, as was its right under § 8, ch. 310, Laws of 1927, p. 850, to the superior court for Thurston county. A hearing upon the merits in the superior court resulted in a judgment reversing the order of the department and directing the allowance of the claim, the court being of the opinion that the claimant was in the course of his employment within the meaning of the workmen's compensation act as construed in *Wabnec v. Clemons Logging Co.*, 146 Wash. 469, 263 Pac. 592. From that judgment the department has appealed to this court.

The respondent logging company cuts its logs in the woods and transports them from that point over its own logging railroad approximately five miles to its easterly terminus at Eldon, where the logs are dumped into Hood's Canal for water transportation to market. The isolation of that portion of the operations of the logging company necessitated the maintenance of a camp at that point where two hundred or more of the employees were required to sleep and board. At the easterly end of the railroad at Eldon, on the shore of the canal, the respondent had approximately forty employees. No camp was maintained at Eldon by the respondent, as other accommodations were available. The railroad was not a common carrier. It was owned and operated by the respondent ex-

clusively for transportation of its own logs and supplies, and for transporting, free of charge, its employees both ways between Eldon and the camp in the woods.

The respondent maintained and operated over its railroad a gasoline-propelled speeder, principally used for free transportation of its employees. Many of the employees who worked in the woods and were required to live at the camp were accustomed to leave the camp Saturday evening or Sunday morning, going out to Eldon and elsewhere beyond to spend Sunday, returning in time for work Monday morning. Any of the employees so desiring were carried free of charge on the speeder, which made a special trip to Eldon, departing from the camp about six-fifteen each Saturday evening and departing from Eldon on the return to camp each Sunday evening at eight o'clock. Those seeking entertainment in Shelton any night during the week were privileged to ride free of charge on the speeder from the camp to Eldon and return. The respondent's foreman testified:

"Q. Is it customary for the employees up there to go out occasionally? A. Oh, yes, they go out quite often. Q. They go out on Saturday night, or Sunday morning? A. Yes. Sometimes during the week they go down, ride down here to Shelton and take in a show. The speeder comes up and takes them down and brings them back up again."

Spears was employed by the logging company to work in the woods, hence he was required to sleep and board at the camp. He had been so employed for two months at the time of his injury. Sunday morning, November 27, 1927, the speeder, in charge of an employee assigned by the respondent to operate it, proceeded from the camp towards Eldon. Spears was aboard the speeder, but what his mission was in going to Eldon the record does not disclose. We assume that he went

from choice and for recreation, intending to return to the camp in time for work Monday morning. Spears was paid daily wages only for the time he actually worked. He was regularly employed for an indefinite period. There is nothing from which we may infer that Spears departed from the camp with any thought on the part of himself or of the respondent that his employment was then terminated. He was not on duty, as he had concluded his work at five p. m., Saturday, the day before, and he was not required to report for duty until seven-thirty a. m., Monday. No one had any supervision over him. He was not receiving any pay from his employer on the day that he was injured. The trip he had commenced to make from the camp to town was being made on his own time and for his own personal reasons. Respondent's foreman testified that it was not necessary for Spears to go to Eldon at that time for anything to carry on his work and that

" . . . from five o'clock Saturday afternoon until 7:30, Monday morning that being Saturday afternoon, November 26, and Monday morning, November 28, Mr. Spears had no duties whatsoever to perform for the Hama Hama Logging Company."

On the trip to Eldon, the speeder collided with a logging train and Spears was injured. For that injury he filed his claim for compensation, which resulted as recited above.

██ Spears was an employee of the logging company and was on the premises of his employer at the time he was injured. Was he injured "in the course of his employment" within the meaning of the workmen's compensation act?

We held in *Bristow v. Department of Labor and Industries,* 139 Wash. 247, 246 Pac. 573, that an employee, injured at the plant of his employer, though he was not engaged in the course of his employment, was en-

titled to compensation; that if injured away from the plant of his employer, he must be in the course of his employment. We said:

"The workmen's compensation law does not require that one injured at the plant of his employer must, at the time of his injury, be engaged in the course of his employment. It is only when the injury occurs away from the plant of his employer, that he must be 'in the course of his employment.'"

In *Wabnec v. Clemons Logging Co.*, 146 Wash. 469, 263 Pac. 592, we followed the rule announced in *Bristow v. Dept. of Labor and Industries, supra*. Wabnec was employed by the logging company and placed upon its logging train in November, 1925, to go to his place of work at its camp in the woods, it not being contemplated that he would have any actual work to do until he arrived at the camp in the woods. During the trip a collision occurred, resulting in injury to Wabnec. He sued the company seeking recovery of damages from it instead of making claim against the workmen's compensation accident fund. In denying his claim of recovery against the logging company, we said:

"The appellant in this case was injured while in the course of his employment and incidental thereto, for it was necessary for him to be riding on the respondent's train on his way to work, and it is often held under similar circumstances where the employer has furnished the means of transportation to the place of work and either before or after the work has actually commenced the employee is injured, that that injury arises out of and in the course of his employment. . . The right which the appellant had to be on the train arose out of the fact that he was an employee, his injuries occurred while on the premises of his employer, and under such circumstances the workmen's compensation act must apply."

Neither of the foregoing cases is applicable. Both were decided under the provisions of Rem. Comp.

Stat., § 7675, prior to amendment in 1927. In each instance the employee was injured while on the premises of the employer. The *Bristow* case announced the rule that an employee injured at the plant of his employer, even though he was not then engaged in the course of his employment, was entitled to compensation under the workmen's compensation act. The *Wabnec* case, in which the judgment of the superior court was entered almost two months before the 1927 amendment of Rem. Comp. Stat., § 7675, became effective, followed and reiterated the rule announced in the *Bristow* case. The language of Rem. Comp. Stat., § 7675, was then as follows:

"Workman means every person in this state, who is engaged in the employment of an employer coming under this act, whether by way of manual labor or otherwise, *and whether upon the premises or at the plant or, he being* in the course of his employment *away from the plant of his employer:* . . ." (Italics ours.)

The italicized portion of the statute was deleted by the 1927 amendment. The provisions of the workmen's compensation act under which the case at bar must be decided are as follows:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: . . ." Laws of 1927, p. 815, § 2 [Rem. 1927 Sup., § 7675].

"Each workman who shall be injured in the course of his employment, . . . shall receive out of the accident fund compensation in accordance with the following schedule, . . ." Laws of 1927, p. 834, § 4 [Rem. 1927 Sup., § 7679].

If, at the time of the injury, Spears was engaged in or was furthering his employer's business, he was injured "in the course of his employment." If Spears

was injured at a time when he was doing something solely for his own benefit or accommodation, he was not injured "in the course of his employment."

"The words, 'in the course of the employment' relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *Case of Fournier*, 120 Me. 236, 113 Atl. 270.

"The controlling factor in determining whether the employee is in the course of his employment is whether at the time of the accident he was within the orbit, area, scope, or sphere of the employment." *Danville, U. & C. R. Co. v. Industrial Commission*, 307 Ill. 142, 138 N. E. 476.

Within the meaning of the workmen's compensation act, an injury arises in the course of the employment,

". . . when it occurs within the period of the employment at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it." 2 Words & Phrases (3d Series), 594.

Spears was not engaged in furthering the interests of his employer at the time he received his injuries. Those injuries were sustained on an occasion when time was his own. He was making the trip from the camp on his own time and for his own personal business or pleasure. He was not working. No one had any supervision over him. He was not receiving pay from his employer on the day he was injured.

It is argued that, had Spears lived at Eldon and had been transported daily to and from his work in the woods over his employer's railroad, there being no other way of reaching his work, such transportation

would have been incident to his employment. The facts of this case do not present that question. Spears did not live at Eldon. His home, to all intents and purposes, was at the camp. Had Spears lived at Eldon and, as a part of his contract of employment, the logging company supplied transportation for Spears from his home to his work and back to his home each day, the rule (with which we do not disagree) enunciated in *Swanson v. Latham,* 92 Conn. 87, 101 Atl. 492, would apply.

That is, where, as a part of a contract of employment, the employer supplies a conveyance for the transportation of the employee from his home to his work and back to his home each day, the work begins when the employee boards the conveyance, and continues during the trip and during the work and on the return trip. Under such a special contract, if an injury occur during the transportation, the injury occurs within the period of the employment, at a place where the employee has a right to be and while he is doing something incidental to his employment because contemplated by it.

"An injury received by an employee while riding, pursuant to his contract of employment, to or from his work in a conveyance furnished by his employer, is one which arises in the course of and out of the employment." *Swanson v. Latham,* 92 Conn. 87, 101 Atl. 492.

The logging company merely permitted or authorized its employees to ride on the speeder free of charge, as a convenience to the employees, and not in the furtherance of its business. This is not a case wherein the employer has agreed to transport its employees to and from their work daily as a part of its contract with them. Here the employee sustained an injury when he was not performing any duty that he

owed to his employer. The employer had no control over him whatsoever. The trip on which the employee had started was one of choice, and was being made for personal reasons solely. The logging company's transportation facilities afforded opportunity to the employee to enjoy periods of rest outside of the camp. The speeder was available for the convenience of the employees when off duty. Transportation thereon was free to the employees. The contribution of the means whereby the employees could frequently seek diversions outside of the camp, though deemed in the nature of compensation paid by the employer to the employee, does not constitute employment. A trip for the purpose of pleasure was not in any sense employment.

The language of the 1927 statute is free from ambiguity. There is no reason why that language should not be literally construed, as the language is plain, the meaning unmistakable. The purpose of the amendment (Laws of 1927, p. 815, § 2) is as clear as language can express. When the 1927 statute is read in the light of the language of the prior act and our decisions thereunder, the legislative purpose is accentuated. The legislature intended that the protection under the workmen's compensation act should be restricted to employees injured in the course of their employment; that presence on the premises of the employer at the time of the injury is not alone sufficient. It follows that an employee, injured at a time when he is doing something solely for his own benefit or accommodation, and not while engaged in or furthering his employer's business, is not injured "in the course of his employment."

We have not overlooked *Lamm v. Silver Falls Timber Co.*, 286 Pac. (Ore.) 527, but are not inclined to follow the holding in that case, for the reasons above stated.

The judgment is reversed, and the order of the department is affirmed.

MITCHELL, C. J., FRENCH, FULLERTON, MAIN, BEALS, TOLMAN, and HOLCOMB, JJ., concur.

PARKER, J. (dissenting)—Section 767.9, Rem. Comp. Stat., as amended by § 4, ch. 310, Laws of 1927, p. 834, reads in part as follows:

"Each workman who shall be injured *in the course of his employment* . . . shall receive out of the accident fund compensation in accordance with the following schedule, . . ."

I italicize the words to be particularly noticed. It seems plain to me that Spears was injured while an employee of the logging company. True, his wages were so much per day and he was paid only for the time he actually worked, but he was regularly employed for an indefinite period, and manifestly he did not leave the camp on the day he was injured with any thought on the part of himself or the logging company, his employer, that his employment was then terminated.

It seems equally plain to me that Spears was injured while on the premises of the logging company, his employer, in the sense that he was then at its plant, its railway being a part of its plant. This rather strongly suggests that Spears would more readily be considered as injured in the course of his employment than as if he had been injured away from the plant of his employer. Suppose Spears had lived at Eldon and had been, in compliance with his employment contract, transported daily to and from his work in the woods over his employer's railway, there being no other way of reaching his work. It could hardly be seriously argued in such case that such transportation would not have been incident to his employment. It is

true that Spears was leaving the camp on a mission of his own, but it was manifestly contemplated by his employment contract that he was privileged to do this and would frequently exercise that privilege, and that his employer would furnish him transportation to and from the limits of its plant over the only available way between his work and such limits.

Under the circumstances here appearing, I think that Spears, with reference to his leaving and returning to his work by the transportation furnished by his employer, was in the same situation as if he had lived at Eldon and had been daily so transported to and from his work. It was, by his employment contract, plainly contemplated by himself and his employer that he would frequently leave and return to the camp in the manner he was doing on the Sunday he was injured, just as it would have been contemplated that he would daily go to and from his work by the same means had he lived at Eldon.

Our decision in *Wabnec v. Clemons Logging Co.*, 146 Wash. 469, 263 Pac. 592, I think, comes near being decisive as against the order of the department and in support of the judgment of the trial court in this case. There Wabnec was employed by the logging company and placed by it upon its logging train to go to his place of work at its camp in the woods, it not being contemplated that he would actually commence work until he arrived at the camp in the woods. During the trip a collision occurred, resulting in Wabnec being injured. He sued the company, seeking recovery of damages from it instead of making claim against the workmen's compensation accident fund. In denying his claim of recovery against the logging company, we said:

"The appellant in this case was injured while in the course of his employment and incidental thereto, for it

was necessary for him to be riding on the respondent's train on his way to work, and it is often held under similar circumstances, where the employer has furnished the means of transportation to the place of work and either before or after the work has actually commenced the employee is injured, that that injury arises out of and in the course of his employment . . . The right which the appellant had to be on the train arose out of the fact that he was an employee, his injuries occurred while on the premises of his employer, and under such circumstances the workmen's compensation act must apply.''

It is true that the injury there in question occurred prior to the enactment of the 1927 amendment, but the question was as here, was the employee injured ''in the course of his employment?''

In *Swanson v. Latham,* 92 Conn. 87, 101 Atl. 492, there was drawn in question the right to compensation of a workman injured while being carried to his work by transportation furnished by his employer, off the premises and plant of his employer; thus lacking one element which is in this case, that is, Spears being injured on the plant of his employer. Justice Wheeler, speaking for the court, said:

''The contract of employment between the decedent and the defendants required the decedent to work outside of the place of his residence, Willimantic, if his employer should so desire. And the defendants agreed that while the decedent was at work in Stafford Springs they, as a part of his contract of employment, would convey the decedent from his home to his work and back to his home each day in an automobile provided by them. The work began when the decedent reached Stafford Springs; the employment began when the decedent boarded the automobile at Willimantic, and continued during the trip and during the work and on the return trip to Willimantic. Transportation to and from his work was incidental to his employment, hence the employment continued during the transportation in the same way as during the work. The in-

jury occurring during the transportation, occurred within the period of his employment, and at a place where the decedent had a right to be, and while he was doing something incidental to his employment because contemplated by it. The case falls clearly within the construction we have heretofore placed upon the terms of the statute, 'arising in the course of the employment.' *Larke v. Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 Atl. 320. An injury received by an employee while riding, pursuant to his contract of employment, to or from his work in a conveyance furnished by his employer, is one which arises in the course of and out of the employment. The injury arose in the course of the employment and while the decedent was being transported to his home, consequently the employment was the proximate cause of it. It, therefore, arose out of the employment.''

In *Cudahy Packing Co. v. Industrial Insurance Commission*, 60 Utah 161, 207 Pac. 148, 28 A. L. R. 1394, it was held that the death of an employee of a plant, so located that it could be reached only by passing over a railroad track, at a point one hundred feet distant from the plant, by being struck by an engine while he was crossing the track going to his work, arose in the course of his employment. This is a well considered decision, wherein the authorities are ably reviewed. It seems to go a little farther than is necessary for us to do in this case in order to sustain this judgment of the superior court, because there the employee was not on the plant of his employer, nor was he furnished transportation by his employer. The principal ground of the decision seems to be that the employee was going to the plant of his employer and to his work by the only practical way for him to go, though injured at a point off the plant. We find a similar situation and holding in *Lumberman's Reciprocal Ass'n v. Behnken*, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, to which decision, as reported in the

last cited volume, a valuable note is appended.   See also the late decision of the Oregon supreme court in *Lamm v. Silver Falls Timber Co.*, 286 Pac. (Ore.) 527.

These are the outstanding facts calling for affirmance of the judgment of the superior court reversing the order of the department rejecting the claim in question:   (1) Spears was an employee of the logging company at the time he was injured; (2) Spears was injured while on the premises of the logging company; (3) Spears was injured while being transported by the logging company in accordance with his employment contract, incident to his employment, the same as if he had been living off and away from his employer's plant.   I am of the opinion that the judgment of the superior court should be affirmed.