[No. 24685. Department One. January 3, 1934.]

SARAH LOIS HOBSON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*W. H. Abel (T. H. McKay,* of counsel), for respondent.

*Harry Ellsworth Foster, amicus curiae.*

[1]Reported in 27 P. (2d) 1091.

MILLARD, J.—W. H. Hobson, Jr., was on duty twenty-four hours daily as a watchman and general repairman for the Greenwood Logging Company, which had suspended operations. Hobson was required to furnish his own food supplies. The company's logging railroad intersected a county road about four miles from the company's main camp. At this crossing, the company maintained a building where supplies and mail for the camp were left for transportation to the camp by means of a gasoline-propelled speeder furnished by the company for Hobson's use. It was the custom of Hobson's brother, who operated a grocery store near Aberdeen, to take mail and groceries to the crossing and leave them in the company's building, where Hobson would call for same.

On the morning of the day he was killed, Hobson telephoned his brother and ordered some groceries, stating he would go out to the crossing that evening to get same. That evidence was not contradicted. In the evening, it was very stormy. The brother knew he could not get back before dark. Because of the storm and the bad road, the brother decided not to take the groceries to the crossing that evening. He tried to get the deceased on the phone to so inform him, but could not get in communication with him. Deceased's brother got the mail from Mrs. Hobson to take to the crossing with the supplies.

About 7:30 p. m. November 5, 1931, Hobson went to the crossing on the speeder for the mail and groceries. He so informed three witnesses of the purpose of the trip shortly prior to his departure. One Patton accompanied the deceased to the crossing, where they met two men. One of them testified that Hobson informed him that his brother should have left some groceries for him, and that the deceased then decided to go to the home of this witness for some

eggs. Returning from the crossing to the camp one to two and one-half hours subsequent to the time he departed from the camp, Hobson was killed when the speeder left the track.

The claim of the decedent's widow for compensation was filed with the department of labor and industries. The departmental decision rejecting the claim was, upon rehearing and evidence taken, sustained by the joint board, which found that, at the time of the accident, Hobson

" . . . was not engaged in the course of employment for the Greenwood Logging Company; that he was not engaged in an act in the furtherance of his employer's business, but his purpose in leaving the Greenwood Logging Company on November 5, 1931, was for amusement and recreation purposes."

Plaintiff took an appeal to the superior court for Grays Harbor county, where a trial was had to the court upon the certified transcript of the testimony taken before the joint board and the certified departmental file. No additional testimony was taken at the trial. The court found that the record was sufficient to establish the fact that the deceased went from the camp to the road crossing for the purpose of obtaining groceries—there was ample uncontradicted testimony to that effect—and that such a trip would be incidental to his employment. Judgment was entered in favor of the plaintiff. The department has appealed.

The wreck of the speeder on which Hobson was returning from the crossing to the camp resulted in his death. His contract of employment required him to furnish his own food supplies, and it was within the contemplation of that contract that he call at the crossing for such supplies. So, too, it was one of his duties to call at that crossing for mail. The evidence

is uncontradicted that he went to the crossing for both purposes. Not finding the supplies there, as recited above, he endeavored to obtain supplies elsewhere. He was returning to camp from the crossing and had negotiated half of the distance on the return trip and was on the premises of his employer when he was killed. We find no evidence from which it may be reasonably inferred that the trip was made for any purpose other than to obtain supplies.

The action of Hobson—procuring food supplies—was necessary to the proper performance of his work, and constituted no interruption of the course of the employment (twenty-four hours' duty daily as a watchman and general repairman). *Hill v. Department of Labor and Industries,* 173 Wash. 575, 24 P. (2d) 95. Hence, Hobson was engaged in the furtherance of the interests of his employer at the time of the fatal accident. He was killed while in the course of his employment, therefore his widow is entitled to compensation.

The judgment is affirmed.

BEALS, C. J., MITCHELL, MAIN, and STEINERT, JJ., concur.