[No. 25350.   Department Two.   December 20, 1934.]

GARNET LENORE BLANKENSHIP, *Respondent*, v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant.*[1]

*The Attorney General* and *Browder Brown, Assist-ant,* for appellant.

*C. D. Cunningham,* for respondent.

MITCHELL, J.—On September 9, 1933, Benjamin F. Blankenship engaged in extrahazardous work as an employee of Lewis county in road work. More particularly, he was "helper" in the operation of a caterpillar gasoline shovel. About eleven o'clock that day, he was called from his work by one Cad B. Perkins. In substance, as stated in respondent's brief,

" . . . when motioned to by Mr. Perkins, he left the place where he was working and the tool with which he was working and proceeded to where- Mr. Perkins was standing. This was a short distance from the shovel. Some conversation of only momentary duration passed between Mr. Blankenship and Mr. Perkins,

[1]Reported in 39 P (2d) 981.

and when the former started back to his place of work was shot and killed by Mr. Perkins."

The deceased left a widow, Garnet Lenore Blankenship, and a daughter seven years of age, who resides with her mother, the widow.

The widow filed a claim with the department of labor and industries for compensation, which was denied by the supervisor, and again denied, on appeal to the joint board of the department of labor and industries, upon the finding and conclusion that the death of the deceased "was not the result of any hazard of his employment," and that he was not "injured in the course of his employment."

The claimant appealed to the superior court. The findings of the superior court were (upon referring to the work for which the deceased was employed) that, "while so employed, he was shot and wounded by one Cad Perkins, from which wounds he subsequently died." Also, the following:

"The court further finds that at the time of the death of the said Benjamin F. Blankenship he was called from his work by the said Cad Perkins and a distance of approximately 40 feet from the steam shovel and the said deceased at the time of his death was engaged in no unlawful or wrongful act that in anywise contributed to his said death."

Upon these findings, conclusions of law and judgment were entered reversing the order of the department and directing that the claimant be allowed compensation, together with an attorney's fee. The department has appealed.

James E. Sexton, the operator of the gasoline shovel, was present at the shooting. He testified that Perkins came up and motioned to Blankenship to come out from the machine, and that Blankenship did so; that

"They talked about a half a minute and then I saw Blankenship turn, and as he started to walk to the

shovel, Perkins pulled the gun and shot him. . . . Q. Do you know how wide a right-of-way you were working on? A. I think it was a hundred foot right-of-way. That is what the rest are, but I am not positive of this one. I was near the center of it. Q. Was Blankenship inside of the right-of-way at the time he was killed? A. I would say he was. The road was narrow. It was a 16-foot road and I sat near the side of it. Q. But the right of way was a hundred feet? A. I am not positive, but that is what the general run is. Q. Blankenship died from that shot, did he? A. Yes, sir."

On cross-examination, Sexton testified that Perkins was not at that time, and had never been, connected with the crew; that Blankenship died at the scene of the shooting within forty-five minutes, and that he heard his statement before he died, as follows:

"Q. What was his statement or dying declaration? A. He said Perkins shot him over a cattle stealing deal."

Orville England, the road supervisor in charge of the work, testified that he was at the scene of the tragedy; that the shot was fired behind him, and that he did not know what Blankenship was doing immediately before he was shot, and that Perkins was not in the employ of the county. He further testified, on cross-examination, as follows:

"Q. So Blankenship was not working at the time the shot was fired? A. No, he was not laid off but his line of duty was around the shovel. Q. And he was forty feet from where his actual duties required him to be at the time? A. Yes. Q. And you got there before the second shot was fired and that second shot did not hit Blankenship? A. The second shot did not take effect. Q. Only the one? A. That was the way I figured it. I came to the conclusion that Blankenship was hit the first shot and the second shot I had a hold of the gun and directed it down. . . . Q. Well, right at the time you went over there when Per-

kins attempted to make the second shot, right after the moment of the first shot, did you hear a statement either by Blankenship or Perkins? A. Yes, between shots. Q. What did you hear? A. I asked Perkins if he realized what he was doing and he said, 'yes, that this man was doing me dirt.'"

This was not an industrial injury or accident, but an unjustifiable homicide, committed while the deceased was not "in the course of his employment," by one who was in no manner connected with the service or employment in which the deceased was engaged. Clearly, the injury and death of Blankenship were in no way directly or indirectly, mediately or immediately related to his employment.

The workmen's compensation act originally embraced every workman who shall be injured, "whether upon the premises or at the plant, or, he being in the course of his employment, away from the plant of his employer, etc." It will be noticed that the language is every workman who shall be injured, "whether upon the premises or at the plant, or, he being in the course of his employment, away from the plant." The disjunctive "or" is used so that, altogether, it means that fortuitous events, to give rise to compensation, might happen upon the premises or at the plant or in the course of employment, away from the plant. The statute, as thus written, was discussed and its comprehensive scope dwelt upon in *Stertz v. Industrial Insurance Commission*, 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354, the construction being that compensation did not necessarily depend upon injury "in the course of employment," since the language of the statute also embraced a workman injured on the premises or at the plant.

*Bristow v. Department of Labor and Industries*, 139 Wash. 247, 246 Pac. 573, arose, and was decided, under the same act, and the decision in *Stertz v. Industrial*

*Insurance Commission, supra,* approved and followed. In the *Bristow* case, a workman was injured, not in the course of his employment, but at the plant of his employer. In that case, it was said:

"The workmen's compensation law does not require that one injured at the plant of his employer must, at the time of his injury, be engaged in the course of his employment. It is only when the injury occurs away from the plant of his employer, that he must be 'in the course of his employment.' *Stertz v. Industrial Ins. Comm.,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B 354."

The case of *Wabnec v. Clemons Logging Co.,* 146 Wash. 469, 263 Pac. 592, arose under the same statute, and in that case it was held that Wabnec was injured while in the course of his employment.

Thereafter, the *Bristow* and *Wabnec* cases were particularly noticed in the case of *Hama Hama Logging Co. v. Department of Labor and Industries,* 157 Wash. 96, 288 Pac. 655, as follows:

"Neither of the foregoing cases is applicable. Both were decided under the provisions of Rem. Comp Stat., § 7675, prior to amendment in 1927. In each instance the employee was injured while on the premises of the employer. The *Bristow* case announced the rule that an employee injured at the plant of his employer, even though he was not then engaged in the course of his employment, was entitled to compensation under the workmen's compensation act. The *Wabnec* case, in which the judgment of the superior court was entered almost two months before the 1927 amendment of Rem. Comp. Stat., § 7675, became effective, followed and reiterated the rule announced in the *Bristow* case."

It was then said:

"The language of Rem. Comp. Stat., § 7675, was then as follows: [Certain words of it being italicized by the court]

"Workman means every person in this state, who is engaged in the employment of an employer coming under this act, whether by way of manual labor or otherwise, *and whether upon the premises or at the plant or, he being* in the course of his employment *away from the plant of his empoyer*: . . ."

Then attention was called to the fact that the legislature of 1927 amended the section by omitting the words above italicized, so that the section then read:

" 'Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: . . .' Laws of 1927, p. 815, § 2 [Rem. 1927 Sup., § 7675]."

It is important to keep in mind this history of the law and its present limitation.

In the *Hama Hama Logging Co.* case, one Spears was the injured employee, of whom it was said:

"Spears was an employee of the logging company and was *on the premises* of his employer at the time he was injured. Was he injured 'in the course of his employment' within the meaning of the workmen's compensation act?" (Italics ours.)

That was the vital question in that case, as it is in the present one, and necessitated a consideration of the effect of the limitation contained in the new law, particularly as compared with the old law, as the latter had been construed by the decisions under it. The effect of the holding was that, although Spears was an employee on the premises of his employer, he did not come under the new act, because, when injured, he was not "in the course of his employment. . . . Spears was not engaged in furthering the interests of his employer at the time he received his injuries."

The *Hama Hama* case was considered by the whole court. The extent of the decision is clear and without doubt. It was said:

"The language of the 1927 statute is free from ambiguity. There is no reason why that language should not be literally construed, as the language is plain, the meaning unmistakable. The purpose of the amendment (Laws of 1927, p. 815, § 2) is as clear as language can express. When the 1927 statute is read in the light of the language of the prior act and our decisions thereunder, the legislative purpose is accentuated. The legislature intended that the protection under the workmen's compensation act should be restricted to employees injured in the course of their employment; that presence on the premises of the employer at the time of the injury is not alone sufficient. It follows that an employee, injured at a time when he is doing something solely for his own benefit or accommodation and not while engaged in or furthering his employer's business, is not injured 'in the course of his employment.'"

Cases cited by respondent, based upon statutes essentially different from our present statute, need not be analyzed and reviewed. Our statute is plain, and has been construed contrary to the judgment of the superior court in this case. At the time the deceased was injured, he was not in the course of his employment—he was not under the act.

Reversed, with directions to the superior court to dismiss the claimant's appeal from the order of the department.

BEALS, C. J., STEINERT, and BLAKE, JJ., concur.

HOLCOMB, J., dissents.