[No. 25459. *En Banc.* August 15, 1935.]

LUKE CARTER, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Browder Brown, Assistant*, for appellant.

*Phil K. Eaton* and *Harry Ellsworth Foster*, for respondent.

STEINERT, J.—This is a proceeding under the workmen's compensation act. A claim filed with the department of labor and industries was rejected. On rehearing, the joint board sustained the order of rejection. The superior court, on appeal, reversed the

[1]Reported in 48 P. (2d) 623.

order of the joint board and directed that the claim be allowed. This is an appeal from the judgment of the superior court.

The only question before us is whether the claimant, respondent here, was, at the time of his injury, acting in the course of his employment. The answer to this question depends primarily upon the conclusions to be drawn from the evidence. The cause was tried in the superior court solely upon the certified record of the department. No additional evidence was taken before the court.

Respondent was employed as a locomotive fireman at camp 20 of Schafer Bros. Logging Company, near Brady in this state. It was respondent's duty, among others, to fire up the locomotive at the camp on Sunday afternoons, in order that sufficient steam might be had on Monday mornings when work began. For this particular work, respondent was allowed one hour's pay.

On Saturday afternoon, October 15, 1932, respondent quit work at about five o'clock. Shortly thereafter, he left the camp and went over to the company's camp 1, about eight miles distant, where he spent the night with one "Smoky" Herrington, another employee of the company. The next afternoon at about 3:45 he left camp 1, intending to return to camp 20. About two miles from camp 20, there is a bridge or trestle which spans a shallow canyon. This bridge is upon the company's premises. While walking along the stringers of the bridge, respondent suddenly slipped and fell a distance of ten or twelve feet to the ground below, sustaining the injuries for which compensation is here sought.

There is no dispute as to these facts. However, there is a serious conflict in the evidence concerning other facts vital to the issue involved.

In support of his claim, respondent testified as follows: On the Saturday before the accident, a pop valve on the locomotive had gotten out of repair, necessitating a replacement. The engineer directed him to go over to camp 1 and get another valve, which the engineer was in the meantime to deliver to that point. Respondent was to bring the valve back to camp 20 on Sunday afternoon, install it on the locomotive, and then fire up. It was for this purpose that respondent went to camp 1, where he spent the night. The next day, Sunday, the engineer brought the valve to camp 1 and delivered it to respondent in the forenoon. That afternoon, respondent took the valve and proceeded with it on his way to camp 20, for the purpose of installing it and then firing the locomotive. Before his arrival at camp 20, however, he met with the accident.

Respondent's sole witness testified that he had known respondent for about four years prior to the accident; that when respondent came to see him on the preceding Saturday night, it was simply on a social call and not for any business, so far as he knew. He further testified that the engineer had brought the valve to camp 1 on Saturday evening and had left it there with instructions that it was to be delivered to respondent, who was to install it the next day; that he, the witness, had turned the valve over to the respondent with the above instructions; that, when respondent left camp 1 on Sunday afternoon, he took with him a bundle, the contents of which the witness did not know, except that he heard respondent say that he had ''a pair of shoes for one thing.'' The witness, later in his testimony, described the bundle as being a large one, weighing about twenty pounds, judging from the way that respondent carried it. He also testified that he never saw the pop valve thereafter at camp 1, but

that he did not know whether respondent had taken
it with him on that occasion or not.

Appellant's evidence, on the contrary, was of a dif-
ferent complexion. The engineer testified positively
that, when respondent left camp 20 on Saturday after-
noon, he went on his own initiative and for his own
purposes, and without any directions or order from
anyone relative to the pop valve; that he, the engineer,
intended to get the valve, which was at camp 1, and
bring it to camp 20; that, at respondent's own sugges-
tion, he had left the valve at Herrington's place where
respondent was to stay all night, and that respondent
had volunteered to bring it to camp 20 the next day
when he made his trip to fire the locomotive; that the
arrangement was simply an accommodation to the en-
gineer to save him an extra trip from camp 1 to camp
20; that it was not a part of respondent's duty to make
the trip nor was he allowed, or expected to be allowed,
any time or pay during his absence from camp 20. The
engineer further testified very positively that respond-
ent did not bring the valve to camp 20, but that, about
three weeks later, he himself had gone to Herrington's
place, where the valve had been left, and had then
brought it to camp 20.

Two other witnesses testified for the appellant to
the effect that they had rescued respondent from the
place where he had fallen from the bridge, and that he
had with him at the time a bundle containing a pair
of shoes, but that he had no pop valve.

The matter of the pop valve and the evidence con-
cerning it had an important bearing in the hearing
before the joint board for two reasons: (1) Because
of its possible connection with respondent's purpose
in making the trip to Herrington's place, and his re-
turn to camp 20; and (2) because the credibility of the
testimony concerning the valve had an intimate con-

nection with the rest of the testimony bearing upon the ultimate issue involved. The joint board evidently believed, as it was fully warranted in believing, that respondent did not have the pop valve with him on his return trip from camp 1. If the board disbelieved respondent in that respect, it could readily have disbelieved, as it evidently did, his statements that he had been directed to get the valve or that his mission to Herrington's place was for anything other than purely social purposes.

The decision of the department is, under the statute, to be deemed *prima facie* correct, and the burden of proof is upon the party attacking it. Rem. Rev. Stat., § 7697 [P. C. § 3488]. As we read the record, the weight of the evidence is decidedly in favor of the decision of the department.

The respondent contends that the case is controlled by the following decisions: *Hilding v. Department of Labor & Industries,* 162 Wash. 168, 298 Pac. 321; *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858; *White v. Schafer Bros. Lumber & Door Co.,* 165 Wash. 298, 5 P. (2d) 520, 8 P. (2d) 1119; *Hobson v. Department of Labor & Industries,* 176 Wash. 23, 27 P. (2d) 1091; *Church v. Department of Labor & Industries,* 179 Wash. 443, 38 P. (2d) 234; *MacKay v. Department of Labor & Industries,* 181 Wash. 702, 44 P. (2d) 793. We do not think that those cases are controlling here.

In the *Hilding* case, the employee had gone to a particular place, with other employees, at the *direction* of the employer, to do a particular piece of work. While returning in the manner directed by the employer, he was hurt. He was held to have been acting under the direction of his employer and in furtherance of his employer's business. That decision is in line with the recent case of *Morris v. Department of Labor & In-*

*dustries,* 179 Wash. 423, 38 P. (2d) 395, wherein it was held that one acting under his superior's orders and serving the purposes and furthering the interests of his employer was acting in the course of his employment.

In the *Burchfield* case, the employee was injured while doing the thing that he had been directed by his employer to do. In the *Hobson* case, the employee was injured while performing a duty which, by, and within the contemplation of, his contract of employment, he was required to perform. In the *White* case, it was held that an employee, regularly working on a night shift, who, at the time of his injury, was on the premises of his employer at the place where he usually worked, and at the request of his superior, for the purpose of doing extra day work, if available, was to be considered as being in the course of his employment. In the *Church* case, a bridge-tender, during the hours of his employment, left the premises of his employer to get a clamp which he intended to bring back immediately and use in the repair of the bridge. While on the errand, he was killed. In the *MacKay* case, a workman was injured while engaged upon a similar errand.

It will be observed that, in each of those cases, the workman, at the time of his injury, was either following the specific direction of his employer or else was engaged in doing something in connection with his work. In each case, the workman was clearly in the course of his employment. Those cases are not applicable to the facts in this case as they were determined by the joint board.

There are, on the other hand, two cases which are clearly applicable and controlling here: *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Blankenship v. Department of Labor & Industries,* 180 Wash. 108, 39 P. (2d) 981.

In the *Hama Hama* case, a workman was injured while being conveyed on his employer's speeder from camp to town on a Sunday trip for recreation. It was held that, since he was doing something for his own benefit or accommodation at the time of his injury, he was not in the course of his employment. The opinion in that case clearly pointed out that, since the 1927 amendment to Rem. Comp. Stat., § 7675 (the amended section now appearing as Rem. Rev. Stat., § 7675 [P. C. § 3470]), the workman, in order to come within the provisions of the act, must be in the *course of his employment,* even though he be on the premises of his employer at the time of his injury.

In the *Blankenship* case, a workman was momentarily called from his work upon a highway by one who was in no way connected with the service or employment in which the workman was engaged. After a few minutes of conversation and after the workman had returned to the highway and was about to resume his work, he was shot down and killed by the other party. We held that the workman was not, at the time of his injury, in the course of his employment.

Holding, as we do, that the evidence preponderates in favor of the findings of the joint board, it follows that respondent was not, at the time of his injury, in the course of his employment.

The judgment is reversed, with direction that the order of the department be affirmed.

MITCHELL, MAIN, BEALS, TOLMAN, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—Whether claimant had two missions at camp 20 on the Sunday afternoon in question, namely: one, to replace a defective safety-valve on the locomotive on which he was a fireman; and two, to fire up so that steam would be ready Monday

morning, is entirely immaterial. The matter of the pop-valve and whether claimant was a mere volunteer to take it and replace it on the engine, or whether directed so to do by the engineer in charge, is unimportant.

It is undisputed that it was the duty of claimant to go to the engine on Sunday afternoon or evening and fire the locomotive so that it would be ready to operate Monday morning. For that duty, he was allowed pay by his employer. Consequently, it is undisputable, as a matter of fact and of law, that claimant was proceeding to perform a duty for his employer which no one else was employed to perform. This undisputed evidence conclusively establishes that the decisions of the department and of the majority were and are wrong.

There can be no distinction in principle between this case and those cited by the majority as those upon which respondent relies, especially *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858; *Church v. Department of Labor & Industries,* 179 Wash. 443, 38 P. (2d) 234 and *MacKay v. Department of Labor & Industries,* 181 Wash. 702, 44 P. (2d) 793.

*Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655, and *Blankenship v. Department of Labor & Industries,* 180 Wash. 108, 39 P. (2d) 981, cited and relied upon by the majority, are easily distinguishable. In the *Hama Hama* case, as was stated, the workman was injured while being conveyed on a speeder from a Sunday trip to town for recreation. There was no duty on his part to return on Sunday afternoon to perform a necessary service for his employer. In the *Blankenship* case, the writer of the opinion very definitely and positively declared:

"'This was not an industrial injury or accident, but an unjustifiable homicide, committed while the deceased was not 'in the course of his employment,' by one who was in no manner connected with the service or employment in which the deceased was engaged. Clearly, the injury and death of Blankenship were in no way directly or indirectly, mediately or immediately related to his employment.''

The decision of the majority in this case is so clearly opposed to the facts and the law as to be entirely unjustifiable.

For these reasons, I am compelled to dissent. The judgment should be affirmed.

BLAKE, J., concurs with HOLCOMB, J.