[No. 26301. *En Banc.* May 20, 1937.]

OSCAR E. WOOD, *Appellant,* v. A. H. CHAMBERS PACKING COMPANY, *Respondent.*[1]

[1]Reported in 68 P. (2d) 221.

*Harry Ellsworth Foster* and *Phil K. Eaton,* for appellant.

*Thos. L. O'Leary,* for respondent.

*The Attorney General* and *J. A. Kavaney, Assistant, amici curiae.*

STEINERT, C. J.—Plaintiff brought this action to recover damages for personal injuries sustained by him as the result of a collision between an automobile in which he was riding and a truck owned by defendant and operated by one of its employees. Upon the issues presented, the case was tried to a jury, which returned a verdict for plaintiff. Motion for new trial and motion for judgment notwithstanding the verdict were interposed by defendant. The court denied the motion for new trial, but granted the motion for judgment notwithstanding the verdict and, thereafter, entered judgment dismissing the action with prejudice. The plaintiff has appealed.

The ultimate question presented by the appeal is whether appellant is entitled, under the facts, to maintain an action against respondent for damages, or whether his sole remedy is under the workmen's compensation act.

Respondent is a corporation engaged in the business of shipping meat supplies in southwestern Washington. For that purpose, it owned and operated a Diamond T truck, which on the day and place of the accident was being driven by its employee. Respondent paid industrial insurance premiums on its driver, according to the provisions of the workmen's compensation act.

Appellant had, for many years prior to the time of

the accident, been intermittently employed in the state highway department. On and prior to November 2, 1934, he was engaged in reconstruction work on the paved road between Hoquiam and Humptulips, covering a distance of about seventeen miles. The highway department maintained a local office at Hoquiam, at which the workmen congregated in the morning and to which they returned in the evening before repairing to their respective homes. Work began at eight a. m., at which time the members of the various crews started from the office, and ended at five p. m., upon their return to the same point.

In connection with its operations, the highway department owned and maintained a Ford automobile, made over into a light truck, which was used daily for carrying the men and their tools and equipment from the office to, and between, the several stations at which the work was being performed, and back again to the office at the end of the day. At night, the automobile was kept at an all-night garage in Aberdeen, which is about two miles from Hoquiam.

It appears that formerly the local office had been located at Aberdeen, and at that time the automobile had been kept in the garage above mentioned. According to the evidence, the garage at Aberdeen was more convenient and suitable for the department's needs than any garage that might have been obtained at Hoquiam, even after the removal of the local office to the latter place.

It also appears by the evidence that a number of the workmen, including appellant, lived at Aberdeen; and that, in going to Hoquiam in the morning and returning in the evening, they generally rode in the Ford automobile as it made its trips between the office and the garage. That, however, was a matter which was left to each individual workman's convenience

and choice. If any one of them wished to use the automobile in the morning, he could do so by reporting at the garage by seven-thirty, or, in the evening, after work, by taking passage in the automobile when it left the office on its trip to the garage. There was, however, a regular bus service between Hoquiam and Aberdeen, which the men could use, if they wished. They could also drive their own cars, which some of them frequently did.

According to appellant's evidence, he used the Ford automobile about one-half or two-thirds of the time. At other times, he accompanied other workmen to or from the local office in their privately owned cars.

It was stipulated by counsel during the progress of the trial that the work for which appellant was employed was of a kind that would bring him under the workmen's compensation act. The department paid industrial insurance premiums upon him and the other workmen on the basis of the number of hours that they actually worked.

On the day in question, November 2, 1934, the crew of which appellant was a member arrived at the office in Hoquiam in the Ford automobile at five p. m., at which time their work for the day ended. After unloading their tools and equipment, the men reentered the automobile and started for their homes in Aberdeen. At the intersection of Willow street and Aberdeen avenue, in the city of Aberdeen, the automobile collided with respondent's truck, resulting in the injuries for which this action was brought. The accident occurred at about five-twenty p. m.

The sole assignment of error is based upon the order granting the motion for judgment notwithstanding the verdict. The law question thus presented to us is whether, under the provisions of Rem. Rev. Stat., § 7675 [P. C. § 3470], appellant had the right to bring

this action against the respondent as a tort feasor, or whether, on the other hand, he was restricted to the protection afforded by the workmen's compensation act.

That section, in so far as it is pertinent here, provides as follows:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, *in the course of his employment*: Provided, however, That if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman . . . shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; . . . Provided, however, That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act. . . ." (Italics ours.)

Respondent contends that both parties to this action were within the protection of the workmen's compensation act; and that, therefore, under the limitations of the second proviso of the statute above quoted, no action for damages could properly be brought against it. On the other hand, appellant contends that neither party came within the provisions of that act, and that, therefore, he could maintain an action for damages against respondent. Counsel argue two questions stated thus: (1) Was respondent's business extra-hazardous? and (2) Was appellant in the course of his employment at the time of the accident? It is conceded that, unless both of these questions are answered in the affirmative, appellant was entitled to bring an action for damages.

The members of this court are divided in their views

upon these two questions. Some are of the opinion that, under the evidence, respondent's business was not shown to have been extrahazardous within any classification of the workmen's compensation act. Others, holding a contrary opinion, are, in turn, of the view that appellant was not, at the time of the accident, in the course of his employment; with this view, the first group does not agree. However, whether of the one opinion or of the other, these two groups concur in the result herein reached.

So far as this opinion is concerned, it proceeds upon the view that appellant was not, at the time of the accident, in the course of his employment, and therefore was not within the terms of the workmen's compensation act.

In applying the statute above quoted to any given state of facts, we must always keep in mind that a person, in order to come within the status of a workman, within the meaning of the workmen's compensation act, must meet two requirements: (1) He must be engaged in the employment of an employer who comes under the act; *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973; *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133; *Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275; *Jannak v. Department of Labor & Industries,* 181 Wash. 396, 43 P. (2d) 34; *Lindquist v. Department of Labor & Industries,* 184 Wash. 194, 50 P. (2d) 46; and (2) he must be acting in the course of his employment at the time of receiving the injury. *Brown v. Department of Labor & Industries,* 135 Wash. 327, 237 Pac. 733; *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Nelson v. Booth Fisheries Co.,* 165 Wash. 521, 6 P. (2d) 388; *Hill v. Department of Labor & Industries,* 173 Wash. 575, 24 P. (2d) 95;

*Blankenship v. Department of Labor & Industries,* 180 Wash. 108, 39 P. (2d) 981; *Carter v. Department of Labor & Industries,* 183 Wash. 86, 48 P. (2d) 623; *MacRae v. Department of Labor & Industries,* 185 Wash. 343, 54 P. (2d) 1017.

If either of the two essentials just noted be lacking, the person is not a workman within the meaning of the act, and, therefore, is not entitled to its protection or limited by its restrictions. Hence, if appellant was not in the course of his employment at the time of the accident, the second proviso of Rem. Rev. Stat., § 7675 [P. C. § 3470], above quoted, on which respondent relies, would not be applicable.

▮ It clearly appears from what has already been said concerning the evidence herein that, at the time of the accident, appellant's work for the day had ended, his pay had stopped, and his employer's authority over him had ceased. Appellant was then no longer engaged in furthering his master's interests. He was simply on his way home, on his own time, over a route and in a vehicle which he could follow and use according to his own choice and volition.

A person, while going to or returning from his place of work, is not a workman "in the course of his employment," unless the means of transportation used by him has been furnished by his employer as an incident to, or as part of the contract of, his employment. *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Hobson v. Department of Labor & Industries,* 176 Wash. 23, 27 P. (2d) 1091; *Venho v. Ostrander R. & Timber Co.,* 185 Wash. 138, 52 P. (2d) 1267; 1 Honnold on Workmen's Compensation, p. 375, § 110.

In the *Venho* case, the rule and exceptions are set forth discriminatively in the following language:

"It is the general rule (to which this court adheres) that a workman injured going to or from the place of work is not 'in the course of his employment.' There is an exception, however, as well established as the rule itself. The exception, which is supported by overwhelming authority, is this: When a workman is so injured while being transported in a vehicle furnished by his employer *as an incident of the employment,* he is within 'the course of his employment,' as contemplated by the act. In other words, when the vehicle is supplied by the employer for the *mutual benefit of himself and the workman to facilitate the progress of the work,* the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor." (Italics ours.)

To the same effect are the following cases from other jurisdictions: *De Voe v. New York State Railways,* 218 N. Y. 318, 113 N. E. 256, L. R. A. 1917A, 250; *Tallon v. Interborough Rapid Transit Co.,* 232 N. Y. 410, 134 N. E. 327, 21 A. L. R. 1218; *Enterprise Foundry Co. v. Industrial Acc. Commission,* 206 Cal. 562, 275 Pac. 432; *Orsinie v. Torrance,* 96 Conn. 352, 113 Atl. 924; *Leveroni v. Traveler's Ins. Co.,* 219 Mass. 488, 107 N. E. 349; *Hills v. Blair,* 182 Mich. 20, 148 N. W. 243; *Dent v. Ford Motor Co.,* 275 Mich. 39, 265 N. W. 518.

Appellant comes squarely within the rule above stated, and not within the exception thereto. The automobile in which he was riding at the time of the accident was not furnished as a part of appellant's contract of employment, nor was its use by him made at all for the benefit of his employer to facilitate the progress of the work. It was merely an available means of transportation adopted by appellant for his own accommodation.

An added fact, having significance in the case, although not controlling, is that appellant's employer paid into the accident and medical aid funds "a cer-

tain number of cents for each man hour worked by the workmen in his [its] employ, engaged in extra-hazardous employment," in accordance with the rate prescribed by Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471]. Had it been intended by the legislature to cover hazards involved in transportation after the hours of actual employment, it is fair to assume that some provision would have been made for the collection of premiums covering the extra time.

The judgment is reversed, with direction to the trial court to reinstate the verdict and enter judgment thereon.

HOLCOMB, BEALS, TOLMAN, MILLARD, GERAGHTY, and ROBINSON, JJ., concur.

BLAKE, J. (concurring)—I am of the view that, under the rule laid down in *Wabnec v. Clemons Logging Co.*, 146 Wash. 469, 263 Pac. 592, and followed in *Venho v. Ostrander R. & Timber Co.*, 185 Wash. 138, 52 P. (2d) 1267, plaintiff was in the course of his employment at the time he sustained his injuries. On the other hand, I am of the opinion that, under the rule laid down in the cases of *Acres v. Frederick & Nelson*, 79 Wash. 402, 140 Pac. 370, and *Denny v. Department of Labor & Industries*, 172 Wash. 631, 21 P. (2d) 275, the defendant failed to sustain the burden of proving that it and the driver of its truck were engaged in extrahazardous industry and employment at the time of the collision.

I therefore concur in the result.

MAIN, J., concurs with BLAKE, J.