BESS DE PORTE, APPELLEE, V. STATE FURNITURE COMPANY, APPELLANT.

FILED JUNE 14, 1935. No. 29293.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*Gray & Brumbaugh* and *Sam E. Klaver, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

GOSS, C. J.

Plaintiff had a verdict for $2,500 on her first cause of action and for $2,000 on the second cause. The trial court entered judgment for a total of $4,500, but, on motion for new trial, ordered a remittitur of $500 on the second cause. Plaintiff complied and defendant appealed from the judgment for the resulting $4,000.

Plaintiff was employed by defendant in its furniture store located at the southwest corner of Fourteenth and Dodge streets, Omaha, and was injured by a fall on the sidewalk at a point several feet from the entrance door of the store as she was leaving at the noon hour on February

16, 1932, to get her usual noonday lunch and to do a personal errand. She pleaded, and the evidence was sufficient to support it, that her fall was caused by ice on the sidewalk produced by water dripping from a canopy or roof maintained by the defendant over the sidewalk at its entrance which was on the corner and extended out from its store. She alleged that the proximate cause of her fall was the negligent maintenance by the defendant of this canopy or roof without proper eaves troughs, drain pipes and leaders to convey from the roof the rainfall or water resulting from thawing snow and ice off of and away from the roof, thereby permitting the rainfall or thawing snow and ice to drip down upon the public sidewalk beneath it. Further negligence of defendant was duly pleaded in that defendant, knowing the condition of the canopy and that a heavy snow had fallen from the 13th to the 16th of February and had lodged upon the roof, failed and neglected to remove it, but permitted it to fall and drip upon the sidewalk and then to accumulate and freeze, without removing the ice from the sidewalk within six hours.

As a result of her fall, plaintiff alleged injuries to her left knee, by reason of which she was confined in a hospital from February 17 to April 21, 1932, suffered great pain and underwent four operations. This comprised her first cause of action.

For her second cause of action, plaintiff set out, as a basis for her husband's right of action, past and prospective hospital and medical bills, including all other damages due him by reason of her injury, and pleaded his assignment to her of all his rights under this cause of action.

By answer the defendant mainly denied generally the allegations of the petition, pleaded that the condition of the sidewalk was open and obvious, that plaintiff failed to keep a proper lookout and to take precautions for her own safety, and that her injuries, if any, were due to her own contributory negligence. Defendant's demurrer to the petition had been overruled, but it preserved the same point in its answer and argued it here—to the effect that the pe-

tition showed that plaintiff was at the time and place of the accident alleged an employee upon the defendant's premises and that her injuries, if any, would be compensable under the workmen's compensation law. Eighteen errors are assigned. Such as are deemed necessary of discussion will be treated in order of our own choosing.

If the action came under the workmen's compensation law, this action for damages is not maintainable. So we treat that subject first. Section 48-101, Comp. St. 1929, provides: "When personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawful imputed negligence of the employer is the natural and proximate cause, he shall receive compensaton from his employer."

Section 48-152, subd. c, Comp. St. 1929, says: "Without otherwise affecting either the meaning or interpretation of the abridged clause, 'Personal injuries arising out of and in the course of employment,' it is hereby declared: Not to cover workmen except while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service as such workmen." Hence, to be compensable, the accident must have arisen out of and in the course of the employment as limited by the above definition. The plaintiff here, when injured, was not actually engaged in any duty of her employment nor upon the premises where the work of her employer was carried on, unless by construction we can hold that passing over the sidewalk in front of her employer's place of business, on her own time for which she was not paid, at the noon hour to get her lunch and to do a personal errand brings her within the scope of the compensation law. Defendant bases its argument in support of this theory upon cases in our own and other jurisdictions.

In *Speas v. Boone County,* 119 Neb. 58, we held that one who was regularly employed in dragging roads for the county at a definite sum a day suspends his work at the

noon hour when he had reached his home, while he was dragging the road in front of his own farm, for the purpose of feeding his team and eating his dinner, and was kicked by one of his horses, after he had unhitched them and was putting them in their stalls to feed them, was injured in the course of his employment, within the meaning of what is now section 48-101, Comp. St. 1929. It is to be noted, however, that it was only incidental that Speas happened to unhitch his team and feed it at his home. Usually he suspended work wherever he happened to be at the noon hour and fed his horses and ate his dinner by the roadside. The first paragraph of the syllabus says: "Generally it may be said that an injury 'arises out of' an employment when there is a reasonable causal connection between the conditions under which the work is, in all the circumstances, required to be performed and the injury received while the employee is thus engaged; and that the injury is received 'in the course of' the employment when, at the time the injury is received, the workman is engaged at the work he is employed to perform or in some duty incidental to that work. If incidental, it must be incidental to the main character of the business on which the employee was engaged for the employer. It cannot occur independent of the relation of master and servant."

*Speas v. Boone County, supra,* goes as far as we have ever gone in holding an injury compensable when it did not occur during the time the workman was actually employed at his work, or actually within the area where his work was contracted to be performed and during the period when he was employed at his work. But the feeding of his team by Speas was the usual incident of the noon hour and he was injured while preparing to feed them.

In *Tragas v. Cudahy Packing Co.,* 110 Neb. 329, this court affirmed a judgment allowing compensation to Tragas, who at the time of his injury was sharpening a chisel on the employer's grindstone for the purpose of cleaning some pans. It happened at the noon hour, on claimant's own time for which he was not paid, but it was a part of

his duty and was done on the premises in furtherance of the employer's work.

Cases from other jurisdictions are cited by appellant tending to support its theory that the injury here was compensable under the workmen's compensation law. If they are not distinguishable, we do not wish to go so far under our law and decisions and so do not take the space to review them.

The injury in the case at bar occurred on a public sidewalk where the employee was exposed to no other or different hazard than the public. She had made herself a part of the general public by going on her own time for lunch and on a personal errand. While it happened near the place where she was employed, it did not happen at the place of work. It was not incidental to the main character of the business on which the employee was engaged for the employer. We decline to stretch the rule heretofore announced. We therefore hold that the injury here did not come under our workmen's compensation law.

Having held that the injury was not compensable under the workmen's compensation law, this leaves the case to be considered and reviewed, as it was tried, as an action at law for damages for negligence. The facts are in dispute in some phases. There was evidence from which the jury might have inferred that plaintiff was not injured, as she claimed, in front of defendant's store on the day named, but near her home on her way to work the day before. That was a question their verdict resolved in her favor.

There was competent evidence that the circular canopy encroached over the sidewalk more than 7½ feet; that it was not so equipped as to carry off rain, melting snow and ice by means of downspouts, but permitted water to fall upon the sidewalk; that, at the time plaintiff fell on the sidewalk, there was a circular ring of ice several inches wide on the sidewalk underneath the outside edge of the circular canopy. Some of the facts are established by circumstantial evidence. This is permitted by the rule laid down in *Rocha v. Payne,* 108 Neb. 246, which says: "Neg-

ligence is a question of fact and may be proved by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of."

Plaintiff is charged with contributory negligence. The jury were duly instructed upon that subject. There was evidence that at the time of the fall the sidewalk was generally free from snow and ice and the strip of ice described was beneath the outside of the canopy; that water was at the time dripping from the edge of the canopy. Whether a pedestrian is guilty of contributory negligence in not looking at the sidewalk at her feet when the sidewalk, except for a narrow strip a few inches wide, is clear of ice, and whether the failure to look is the cause of the fall, when the presence of the ice is obscured by the water falling upon it, is a question of fact for the jury. *Todd v. City of Troy,* 61 N. Y. 506; *City of Lebanon v. Graves,* 178 Ky. 749; *Steck v. City of Allegheny,* 213 Pa. St. 573; *Slife v. Borough of Dorranceton,* 262 Pa. St. 182.

Another error assigned relates to misconduct of a juror, Knott. The trial court, over the objections of plaintiff, on the hearing of the motion for new trial, admitted the affidavits of three of the jurors who had sat in the case. The objections were that the affidavits were incompetent, irrelevant and immaterial, an attempt to impeach the verdict of a jury by affidavits of jurors, involving hearsay evidence and *ex parte* in form, denying plaintiff any inquiry into the circumstances and conditions. The trial court evidently was uninfluenced by the affidavits, but defendant argues that the conduct of the juror, Knott, as shown by the affidavits, entitles defendant to a new trial. The affidavits of the three jurors state that, during the trial and after the submission to the jury, Knott compared the injury to plaintiff's knee to one Knott had received in the world war, and stated to the jury that if he had to choose between a normal leg and $1,000 a month he would take the normal

leg; that Knott told the jury that during the trial he had gone to defendant's store, examined the canopy, describing to the jury what his examination disclosed; that he, Knott, had gone to the records, discovered that on a former trial a verdict in favor of plaintiff for $3,000 had been set aside by Judge Redick because, as Knott inferred, the verdict was not large enough; that Knott was insistent that a large verdict should be rendered and that his argument greatly influenced the jury in arriving at a verdict in this case.

It may be noted that these affidavits relate entirely to what Knott is sworn by affiants to have said in the jury room. They constitute an attempt to impeach the verdict by that means. There is no sworn statement by any juror that, while Knott was a juror, he went either to the scene of the fall of plaintiff, or went to the office of the clerk of the district court to examine the records. These facts are not established, unless by this hearsay evidence set out in these *ex parte* affidavits, with no opportunity for plaintiff to cross-examine the affiants or Knott as to their truth or falsity.

Considerable was said in the argument about the United States rule. An interesting case, illustrative of the rules laid down by the United States supreme court, is *McDonald v. Pless* (1915) 238 U. S. 264. The case was tried in North Carolina. In a motion to set aside the verdict, it was alleged that it was a quotient verdict and the amounts and details by which it was reached were set out. It was alleged that the jurors refused to make affidavits, but stated they were willing to testify to the facts alleged, provided the court thought it proper that they should do so. At the hearing of the motion, one of the jurors was sworn as a witness, but the court refused to allow him to testify on the ground that a juror was incompetent to impeach his own verdict. The ruling was affirmed by the court of appeals and was brought to the supreme court by writ of error. The opinion discusses the hardship on a private party whose wrongs may not be redressed if jurors may not

testify to misconduct, and the public injury which would result if jurors were permitted to testify as to what happened in the jury room. It reviews briefly the English cases and a few United States cases. It affirms the judgment and lays down these rules:

"The courts of each jurisdiction, state and federal, must be in a position to adopt and enforce their own self-preserving rules.

"While Rev. Stat., sec. 914, does not apply in this case, this court recognizes the same policy that has been declared by that court and by the courts in England and in most of the states of the Union, that the testimony of a juror may not be received to prove the misconduct of himself or his colleagues in reaching a verdict.

"The rule, indorsed by this court in this case, that a juror may not impeach his own verdict is based upon controlling considerations of public policy which in such cases chooses the lesser of two evils."

It has long been the rule in this state that affidavits of jurors are not admissible to show any matter inhering in the verdict, but it has been the rule and practice to admit affidavits of jurors as to evidence of misconduct seen and heard by all or a considerable portion of the jury during their deliberations. In *Harris v. State*, 24 Neb. 803, it was shown that a juror procured a copy of the statutes and repeatedly read to the jury a part of the statute upon which he claimed the offense charged against the defendant was based, read to the jury the statutes upon new trials of criminal cases, and argued that, if the part of the statute read did not apply, a new trial would be granted by the court. The opinion by Chief Justice Reese reversed the judgment, saying in the syllabus: "Affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as where a verdict for damages is ascertained by aggregation and average without subsequent ratification, or where it is made to depend upon chance, or where a part

of the jury become so intoxicated as to destroy their ability to deliberate and exercise their reason and judgment, or where witnesses are surreptitiously called before the jury and permitted to detail the principal facts, or any other matter concerning which all or any considerable portion of the jury may testify with equal knowledge, by having seen or heard the misconduct which is alleged to have occurred."

There is no rule preventing either party or the court from examining jurors orally in open court as to what was said and done showing misconduct of jurors.

So far as we are advised, the rule laid down in *Harris v. State, supra,* has not been changed. The conduct of the juror, Knott, either in going to the scene of the accident for observation of the canopy, if he went, or in stating to the jury that he had observed it and what he saw, whether he went or not, his argument to the jury comparing his own injury to that of plaintiff, and his statement as to his examination of the record, constituted misconduct prejudicial to defendant.

It is to be noted that, in resistance to the affidavits of the jurors quoted, plaintiff offered and the court received the affidavit of juror Knott. Therein he merely denies that he ever examined the records and states that he does not know what they show as to the action taken by the jury or judge at the former trial. He does not deny that he told the jury during their deliberations what the other jurors swear he told them in his arguments for a large verdict against the defendant.

Other errors are assigned, but are not insisted upon so vigorously as those we have discussed. What we have already said calls for a decision reversing the judgment and we omit further discussion.

The judgment of the district court is

REVERSED.