[No. 29368.   Department One.   October 21, 1944.]

DON WADDAMS, *Respondent*, v. HOWARD H. WRIGHT *et al.*, *Appellants.*[1]

[1]Reported in 152 P. (2d) 611.

*Kahin & Carmody,* for appellants.

*Leo Teats* and *Ralph Teats,* for respondent.

GRADY, J.—This action was brought by the respondent against the appellants to recover damages for injuries sustained by him as the result of the negligence of a driver in their employ in the operation of a truck. The case was tried before the court without a jury, resulting in a judgment for the respondent, from which this appeal has been taken by the appellants.

The question at issue between the parties was whether, at the time of the injury, respondent was "in the course of his employment," as provided by Rem. Supp. 1941, § 7679, which is as follows:

"Each workman who shall be injured in the course of his employment, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, and, except as in this Act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever."

The appellants were engaged in an extrahazardous business, consisting of the construction of a housing project near Port Orchard. Their operations covered a large area and about three thousand persons were employed. The respondent lived at a bunkhouse on the project and took his meals at a mess hall a short distance to the southwest. He was a cement worker. He did not always have regular hours of employment. When a quantity of concrete mixture would be brought to a given place, the cement workers would stay on the job until it was all put in place.

The appellants had a combination method of keeping a record of the time of their employees. They had a building on the premises, known as the "brass shack," and, as each employee went to work, he would stop there and get a

brass tag, and it was the practice to turn the tag in after quitting work for the day. This custom was not always followed, but the tags would be returned at various times from immediately after quitting work to as much as two hours later, the average time being about one-half hour. Field inspections were made twice a day, and the actual time was kept by the foreman on the job. The employees were paid on the basis of actual working time. No allowance was made for the time spent in going to the brass shack and from there to the job, or from the job to the brass shack, or to the bunkhouse, or to the mess hall.

On the day in question, the respondent had secured a brass tag and commenced work at eight o'clock in the morning. He quit work at four in the afternoon, cleaned and put away his tools, and went northeasterly along a road, his intention being to return to the bunkhouse for a shower, then go to the mess hall for his evening meal, then go beyond about one-half mile to turn in his brass tag, and then leave for Seattle. He was injured while walking along a sidewalk beside the road as he neared the bunkhouse.

It would seem to a reader of § 7679 that the phrase "in the course of his employment" is plain in its meaning and that there should be no difficulty in its application. But, when we consider that, if negligence on the part of an employer exists, it may be to the advantage of an injured employee to maintain a common-law action against the employer for damages, or, if there be no such negligence, to make claim to the department of labor and industries, the question whether the employee was in the course of his employment becomes very important and has resulted in the development of some ingenious arguments and reasonings. There has been found to be quite a twilight zone, with all its attendant difficulties, and expressions have crept into the opinions of the courts which were helpful in the application of the phrase to the facts of given cases; but, if taken out of their settings and applied to some other situation, may lead to illogical results and such as are not contemplated by the lawmaking body.

In applying the phrase, we have adopted the view

that it relates to the time, place, and circumstances under which the workman was injured. If, at the time of his injury, he was engaged in or was furthering his employer's business, in that he was performing some duty required of him by the contract of employment, that would be in the course of his employment; but, if he was injured at a time when he was doing something solely for his own benefit or accommodation, he would not be. *Hama Hama Logging Co. v. Department of Labor & Industries*, 157 Wash. 96, 288 Pac. 655; *Hill v. Department of Labor & Industries*, 173 Wash. 575, 24 P. (2d) 95; *McGrail v. Department of Labor & Industries*, 190 Wash. 272, 67 P. (2d) 851; *Wood v. A. H. Chambers Packing Co.*, 190 Wash. 411, 68 P. (2d) 221; *Young v. Department of Labor & Industries*, 200 Wash. 138, 93 P. (2d) 337, 123 A.L.R. 1171; *Thompson v. Department of Labor & Industries*, 10 Wn. (2d) 277, 116 P. (2d) 372; *Leary v. Department of Labor & Industries*, 18 Wn. (2d) 532, 140 P. (2d) 292.

■ The situations considered in the foregoing cases and the reasons given for the conclusions reached, justified the trial court in holding that the respondent, at the time he was injured, was not in the course of his employment. He had ceased work. His pay had stopped. He was on his way to his place of abode, and was serving a purpose solely his own. It was not connected with the work he had been employed to do, and not in any way incidental to it.

It is urged that the return of the tag to the brass shack was a duty he had to perform under his employment, and was such a part of it, or such an incident to it, that the course of employment continued until that act was done. But the rule, if it may be said there was such, as to the return of the tag when work ceased for the day, was not strictly enforced. That was especially true in the cases of the cement workers, who did not have fixed or regular hours of work. Often they would go to work in the morning before the brass shack was open, and it would often be closed when they finished a particular job.

The return of the brass tag was made after labor ceased and pay had stopped. It had no connection with the work.

The respondent was not even on his way to the brass shack when he was injured. In order to have been on his way there, it would have been necessary for him to travel past his place of abode and about one-half mile beyond. His objective, when he ceased work for the day and started up the road, was to go to the bunkhouse. There is nothing in the record to show that it was contemplated that either the getting or the returning of the brass tag was a part of his contract of employment or a duty to be performed under it. Although there was a sign posted on which appeared "No Brass No Pay," the rule was not enforced by the appellants, and could not be in the absence, at least, of a showing that such an act was a contractual condition precedent to the right to receive compensation for services rendered. Nothing of the kind is claimed here.

█ The appellants also urge that it may properly be said that the respondent was in the course of his employment, because

"The reason is that at the time of his injury respondent was traveling on a road upon the plant of his employer, provided by his employer for his use, and constituting the most direct route between the actual place of his work and the point to which he must go from his work, whether that point happened to be the mess hall, the bunkhouse or the 'Brass Shack.' "

Cases are cited from other jurisdictions dealing with such situations. They recognize that it is sometimes difficult to say just at what time the workman may be deemed to have entered into, or departed from, the course of his employment, and that one of the factors to be considered is whether, at the time he was injured, he was within " 'the orbit, area, scope, or sphere of the employment.' " *Hama Hama Logging Co. v. Department of Labor & Industries, supra.* This opens up a wide field, and those courts have included therein the situations referred to in *Brown v. Department of Labor & Industries,* 135 Wash. 327, 237 Pac. 733, p. 329:

"But there are a number of cases holding that the employment is not limited to the exact moment of arrival at the place of work nor to the moment of departure therefrom; that if, in going to or coming from work, the injury

occurs in a public road close to the employer's premises, and which road is the only way provided for reaching the premises, there may be a valid claim against the fund. In some of the cases it is said that the fact that the accident happens upon a public road which is close to the employer's premises, and that the danger is one to which the general public is exposed, is not conclusive against the existence of the relation of employer and employee, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree. [Citing authorities.]"

One of the reasons given by some courts is that it must be held to have been within the contemplation of the parties when the employment contract was made that the course of employment should cover the area referred to and the presence of the workman there to be an incident to his employment.

But whatever justification there may be for the views expressed in those cases, they are not applicable to the facts of this case. The respondent was not required to follow any fixed route to get to or go from his place of work on the grounds of the appellant. His place of abode was on the premises of his employer, and the whole situation fairly indicates that it was contemplated he would be out of the course of his employment when his actual work ceased at any particular time, and thereafter until he again returned to his work. The return of the brass tag to the shack was not an act incidental to, or in any way connected with, cement work or anything respondent had been employed to do, but was merely something done after his work ceased to aid in furnishing proof that he had actually worked for his employer.

We believe that to say the respondent was in the course of his employment at the time he was injured would be to extend the meaning of the workmen's compensation act beyond its true intent and purposes.

The judgment is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.