[No. 29674. *En Banc.* March 19, 1946.]

MARY D'AMICO, *as Administratix and Personally, Respondent,* v. JOE CONGUISTA *et al., Appellants.*[1]

[1]Reported in 167 P. (2d) 157.

*Eggerman, Rosling & Williams,* for appellants.

*P. O. D. Vedova* and *Padden & Moriarty* (*James Kelleher,* of counsel), for respondent.

SIMPSON, J.—Plaintiff brought this action as administratrix of the estate of her deceased husband, Joseph D'Amico, for her own benefit and that of the two minor children of herself and Joseph D'Amico. The complaint alleged that the death of D'Amico was caused by the negligence of defendants. The charges of negligence are as follows: (1) that the operator of a truck owned by defendant and, at the time of the accident, being operated by an agent and

servant of defendants, on defendants' business, was so operated at an excessive rate of speed; (2) that the operator of the truck was incompetent and unfit to operate the truck; (3) that the truck, and especially the wheels thereon and the axles connected therewith, was in a defective condition, which defective condition, in connection with the manner of operation, resulted in a wheel becoming disengaged from the truck, rolling into and striking Joseph D'Amico as he was standing near the northwest corner of Airport way and Walker street, in Seattle.

The answer contained a general denial of the charges of negligence and then admitted that the death of D'Amico was caused by a wheel from defendants' truck. As an affirmative defense, defendants alleged that, at the time and place of the accident, D'Amico was engaged in extrahazardous employment and was in the course of his employment; that defendants were likewise engaged in the course of extrahazardous employment, all within the meaning of the workmen's compensation act of the state of Washington. That, by the provisions of the act, plaintiff's exclusive remedy was against the insurance fund established by law. The reply put in issue the charges made in the affirmative answer.

The case tried to the court, sitting with a jury, resulted in a verdict in favor of plaintiff. After denying a motion for a judgment n. o. v. or, in the alternative, for a new trial, the court entered judgment upon the verdict. Defendants have appealed. Their assignments of error are: denial of appellants' motion for a directed verdict; the denial of appellants' motion for a judgment n. o. v. or, in the alternative, for a new trial; the entry of judgment on the verdict; the giving of instructions Nos. 7, 11, and 13; and the refusal to give defendants' proposed instruction No. 2.

The material facts relative to the questions present in this case are: Appellants, at the time of the accident, were engaged in extrahazardous work, and the truck owned and operated by them was used in that work. Appellants paid into the accident and medical aid funds the amounts required by the workmen's compensation act for the months

of April and May, 1944. The Malaspino Company, D'Amico's employer at the time of the accident, was also engaged in extrahazardous work and had paid into the accident and medical aid funds the amount required up to the date of the accident. D'Amico was, as such employee, engaged in extrahazardous work.

The accident happened May 11, 1944, at approximately 12:25 p. m., while D'Amico was standing in the sidewalk area near the northwest corner of Airport way and Walker street in the city of Seattle. Airport way runs north and south, having a width from curb to curb of fifty-eight feet. Walker street extends to the west of Airport way, and is forty-two feet wide. For some time prior to the day of the accident, D'Amico's employer had been engaged in laying a water main along the parking strip on the west side of Airport way north of Walker street, in which work D'Amico and other workmen were engaged. When the workmen came to Walker street, it became necessary to break the pavement before a ditch could be dug to lay the main.

On the day of the accident, D'Amico was engaged in breaking this pavement, and, at the time the noon rest period arrived, the crew was working in the center of Walker street. The power to operate the drill used by D'Amico came from a compressor which was located immediately to the north of Walker street near the west curb on Airport way. The compressor continued to operate during the noon hour and made considerable noise. When work ceased at noon on the day in question, D'Amico and some of his fellow employees went to the parking strip immediately north of Walker street to eat their lunches. At that time, they were approximately forty or fifty feet away from the place where they had been working. The men customarily brought their lunches, which were eaten near the place where they worked, as it was not practicable for them to go home during the thirty minutes allowed for the noon rest period.

The evidence shows that D'Amico consumed about twenty or twenty-five minutes in eating his lunch, after which he walked to the west curb line on Airport way near

where the compressor was located, and it was while he was at that place, either standing on or just off the curb, that he was struck by a wheel which became disengaged from appellants' truck, and received the injury which resulted in his death. The place where he had been standing was about ten or fifteen feet from where he had been working.

It is conceded that D'Amico worked by the hour and that his employer had no control over him during the noon rest period. It is also admitted that he worked on eight hour shifts, from eight to twelve, and from twelve-thirty to four-thirty, and that he was not paid for the thirty minutes allowed for lunch. In addition, it is conceded that no money was paid to the Washington compensation fund for the noon hour period.

The first question for consideration is whether D'Amico, at the time he was injured, was working in the course of his employment so as to bring him within the provisions of the workmen's compensation act. If D'Amico was a workman, as that term is defined by our statute, at the time he was injured, his administratrix cannot maintain this action. The applicable statute, Rem. Rev. Stat. (Sup.), § 7675, provides:

"Except when otherwise expressly stated, employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extra-hazardous work, by way of trade or business, or who contracts with one or more workmen, the essence of which is the personal labor of such workman or workmen, in extra-hazardous work.

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: . . . *Provided, however,* That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act."

Rem. Supp. 1941, § 7679 [P.P.C. § 705-1]:

"Each workman who shall be injured in the course of his

employment, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, and, except as in this Act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever."

It is appellants' contention that, at the time he was injured, D'Amico had not entered upon a wholly separate and distinct undertaking for his own account, but was standing at his place of work waiting for the whistle to blow, and was in the course of his employment during the noon rest period, within the meaning of the workmen's compensation act.

On the other hand, respondent takes the position that D'Amico was not injured while in the course of his employment, in that he was not at his place of work. He was not injured while he was working, but was injured while on his own time, when he was free to go where he pleased, and at a time when his employer had no control over him. Further, that he was not being paid for the half-hour period which included the time of his injury, that no assessment was being paid by his employer to the industrial fund for this half-hour, and that he was not engaged in any act pertaining to his work, but was simply satisfying his own curiosity by observing and watching the working of a piece of machinery (the compressor), with which he had no connection either during the working time or during the rest period.

Under our workmen's compensation act, definite conditions must exist at the time of an injury in order to entitle one to the benefits of the act. First, the relationship of employer and employee must exist between the injured person and his employer (except in some cases where the injured person is an independent contractor); second, the injured person must be in the course of his employment; third, that the employee must be in the actual performance of the duties required by the contract of employment; and, fourth, the work being done must be such as to require payment of industrial insurance premiums or assessments.

■ Referring to the first condition, it should be said that the common-law rules, except as modified by statute, apply in determining whether the relationship of employer and employee exist. *Hubbard v. Department of Labor & Industries,* 198 Wash. 354, 88 P. (2d) 423; *Clausen v. Department of Labor & Industries,* 15 Wn. (2d) 62, 129 P. (2d) 777.

■ This court has repeatedly held that the test of the relationship of employer and employee is the right of control on the part of the employer over the employee. *Engler v. Seattle,* 40 Wash. 72, 82 Pac. 136; *Cary v. Sparkman & McLean Co.,* 62 Wash. 363, 113 Pac. 1093; *Glover v. Richardson & Elmer Co.,* 64 Wash. 403, 116 Pac. 861; *North Bend Lbr. Co. v. Chicago M. & P. S. R. Co.,* 76 Wash. 232, 135 Pac. 1017; *Machenheimer v. Department of Labor & Industries,* 124 Wash. 259, 214 Pac. 17; *Burchett v. Department of Labor & Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; *Hinds v. Department of Labor & Industries,* 150 Wash. 230, 272 Pac. 734, 62 A. L. R. 225; *Seattle Aerie No. 1 of the Fraternal Order of Eagles v. Commissioner of Unemployment Compensation,* 23 Wn. (2d) 167, 160 P. (2d) 614.

This rule is easily applied to any case of this nature. There is a definite line which can be drawn between working for an employer and the use of time by an employee for his own purposes.

■ Counsel for the respective parties in this case have called to our attention many cases wherein the general question of whether at the time a claimant was injured he was in the course of his employment was discussed. However, we have one case where the injury to a claimant occurred during the noon hour rest period. That case is *Young v. Department of Labor & Industries,* 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171, and is determinative of the question presented here. In that case, the appellant, Young, was employed as a common laborer on the Grand Coulee dam project. During the first four months of his employment, he assisted in the hauling of materials to various parts of the construction, and, during the last four weeks of his work, he was a member of a clean-up crew whose duties were to collect and remove all leftover material, debris,

and rubbish from various parts of the dam, as directed by the foreman. Young's hours of labor were from eight a. m. to twelve noon, and from one p. m. to four p. m. He was paid at the rate of sixty cents per hour. During the noon period, for which the men received no pay, they were not under supervision unless called upon by their foreman to do some special or extra work. The workmen customarily brought their lunches, which they ate on the premises at whatever places they desired. On account of the distances to their homes, it would have been impracticable to do otherwise. On the day he was injured, the appellant, after eating his lunch, descended from the outside of the dam through an opening in its face, proceeded along a gallery, until suddenly he fell down a shaft and was severely injured. It is stated in the opinion that it was not contended appellant went into the interior of the dam for any purpose other than to inspect the premises and to familiarize himself with the character of the construction. The opinion, after quoting Rem. Rev. Stat., § 7675, states:

"The statute does not define the phrase 'in the course of his employment,' and we therefore look to the cases for the meaning ascribed to it."

We then quoted from 71 C. J. 658, § 404, as follows:

" 'An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something *incidental* to it.' " (Italics ours.)

The opinion continues:

"Numerous cases adopting that definition, or others closely similar thereto, are cited in the footnotes to the text.

"The test adopted by this court for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the *furtherance of the employer's interest. McGrail v. Department of Labor & Industries,* 190 Wash. 272, 67 P. (2d) 851, and cases therein cited." (Italics ours.)

In deciding that the claimant was not entitled to compensation, this court stated:

"In this case, it is manifest that appellant's venture had no connection whatever with his meal. He was not seeking a place where he might eat, nor was he returning to work from a place where he had eaten. He had finished his lunch without any mishap and had entered upon a wholly separate and distinct undertaking. When he began his exploration of the interior of the dam, he was not under the supervision or control of his employer, but was on his own time. He was not then engaged in the performance of any of his obligatory duties or anything incident to them. He was not performing a task in furtherance of his employer's work or interest, but was engaged in a voluntary exploration of his own conception. We are satisfied that appellant was not in the course of his employment, within the meaning of the workmen's compensation act.

"The situation was nowise altered by the fact that the alleged purpose of appellant's venture was to acquaint himself with the intricacies of the project and, by thus increasing his value to his employer, ultimately to obtain an increase of wages for himself. The course of his employment required him only to do certain things, at certain times, at specified places, under the supervision of his foreman. It did not require him, nor was he expected, to abandon his routine of work, visit places unfamiliar to him, and expose himself to possible dangers, merely that he might thereby fit himself for a different course of employment. What information he may have expected to gain was solely for his own benefit and in no way contributed to the value of the work which he was engaged to perform. He was not fulfilling any duty required of him by his contract, nor was he furthering the interest of his employer. He was engaged in an independent act having no connection with his work."

It is impossible to visualize cases more alike, in so far as the facts are concerned, than this and the above-cited case. The only difference is that Young was farther away from his place of work when he fell into the shaft than D'Amico was at the time he was injured, and Young could give his reasons for his visit to the dam, while D'Amico's voice was stilled by death, and there were no witnesses to testify for him on this point. There can be no difference in the reasoning in the above-cited case and the one at bar. At the time

of his injury, D'Amico had finished his lunch and was using his own time to gratify a curiosity or maybe learn something about the compressor. As he walked to and stood on the street corner near the compressor, he was not engaged in any duty imposed by his employer, nor was he subject to any supervision by his employer. He was not engaged in any task which had for its purpose the advancement of his employer's work. He was not being paid by his employer, nor was the company further being enriched by his connection with an extrahazardous occupation. In simple words, D'Amico at the time of his injury, and in fact during the whole noon hour, was not in the employ of the Malaspino Company.

Other decisions of this court supporting this conclusion are: *Hoffman v. Hansen,* 118 Wash. 73, 203 Pac. 53; *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Haaga v. Saginaw Logging Co.,* 165 Wash. 367, 5 P. (2d) 505; *Hill v. Department of Labor & Industries,* 173 Wash. 575, 24 P. (2d) 95; *Blankenship v. Department of Labor & Industries,* 180 Wash. 108, 39 P. (2d) 981; *McGrail v. Department of Labor & Industries,* 190 Wash. 272, 67 P. (2d) 851; *Wood v. Chambers Packing Co.,* 190 Wash. 411, 68 P. (2d) 221; *Maeda v. Department of Labor & Industries,* 192 Wash. 87, 72 P. (2d) 1034; and *Waddams v. Wright,* 21 Wn. (2d) 603, 152 P. (2d) 611.

Our attention has been called to the fact that, in some of our cases, we have made statements which would indicate our adherence to a rule that an employee was in the course of his employment when he was eating lunch. Those statements, however, were made in the course of our reasoning and did not, and could not, announce our adherence to such a rule because the question was not present in any of those cases.

Appellants ask for a liberal construction of the workmen's compensation act in order to allow respondent its benefits. We cannot agree with this suggestion. Workmen's compensation acts are liberally construed to those who come within its provisions. However, individuals who make applications for benefits are held to strict proof of

684

their right to receive those benefits. *Kirk v. Department of Labor & Industries,* 192 Wash. 671, 74 P. (2d) 227; *Clausen v. Department of Labor & Industries,* 15 Wn. (2d) 62, 129 P. (2d) 777; *DeHaas v. Cascade Frozen Foods, Inc.,* 23 Wn. (2d) 754, 162 P. (2d) 284.

 It is our conclusion that, at the time D'Amico was injured, he was not engaged in extrahazardous work, and that therefore his widow, acting as administratrix of his estate, was entitled to maintain this action. A reading of the statement of facts convinces us that there was sufficient evidence on the part of appellants' representative to take the case to the jury, and that the verdict should not be disturbed.

Instructions Nos. 7 and 11 read as follows:

"No. 7. You are instructed that when a thing which causes an injury to another is shown to be under the management and control of a person charged with negligence in the operation of such thing or the failure to keep it in a reasonably safe condition, and if it is shown that an accident happened which in the ordinary course of things does not happen, if those in charge of its management and control exercise reasonable care, then the happening of said accidents afford reasonable evidence, in the absence of explanation by the person charged with negligence, that the accident arose from the want of reasonable· care on the part of such person."

"No. 11. If you find from the evidence that the fact that the wheels of defendants' truck came off was such a thing· that would not, in the ordinary course of events, happen if those who had the control, supervision and operation thereof had used proper and reasonable care, then I instruct you that you may infer from the fact that such wheels did so come off that such coming off was due to the negligence of the driver of the truck or of the defendants, and a *prima facie* case is thereby established in favor of the plaintiff.

"The burden then devolves upon the defendants to furnish an explanation or rebuttal of such *prima facie* case by producing evidence of due care and precaution under the circumstances and conditions necessarily within defendants' exclusive control. If, then, after considering such explanations of the whole case, and of all the issues as to negligence, injury and damages, the evidence still prepon-

derates in favor of the plaintiff, then plaintiff is entitled to recover; otherwise not."

■■ It is argued by appellants that the question or doctrine of *res ipsa loquitur* was improperly given. It is their contention that this doctrine is merely a legal presentation to be used when there has been no evidence introduced explaining the cause of a happening; further, that it is a substitute for evidence, and not the evidence itself. That the instructions were properly given is demonstrated by the following quotations:

"The rule, under such circumstances, is:

" 'When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.' 1 Shearman & Redfield on Negligence (6th ed.), § 59; *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N.S.) 1070.

"Proof of regular inspection of the machine still leaves the question of negligence one for the jury. *Lane v. Spokane Falls & Northern Railway Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153. The presumption is overcome as a matter of law only when the explanation shows, without dispute, the happening was due to a cause not chargeable to defendant's negligence. *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870.

"Nor does the allegation and proof of specific negligence deprive a plaintiff of the benefit of the rule. *Walters v. Seattle, Renton & Southern R. Co.*, 48 Wash. 233, 93 Pac. 419, 24 L.R.A. (N.S.) 788; *Kluska v. Yeomans*, 54 Wash. 465, 103 Pac. 819, 132 Am. St. 1121. There is nothing said in the case of *Anderson v. Northern Pacific R. Co.*, 88 Wash. 139, 152 Pac. 1001, L.R.A. 1917F, 1020, which conflicts with the foregoing statement of the rule. It is true, language was used in *Osborne v. Charbneau*, 148 Wash. 359, 268 Pac. 884, 64 A.L.R. 251, which might be construed in conflict with the above statement, but it was unnecessary to the decision and is clearly *obiter*." *Highland v. Wilsonian Inv. Co.*, 171 Wash. 34, 17 P. (2d) 631.

"This court has adopted the rule that, even though a plaintiff should base his action upon the doctrine of *res ipsa*

*loquitur,* he may plead and prove specific acts of negligence on the part of the defendant and rely upon the presumption of negligence and, also, upon his proof of specific acts of negligence in support of his right to recover. *Walters v. Seattle, Renton & Southern R. Co.,* 48 Wash. 233, 93 Pac. 419, 24 L.R.A. (N.S.) 788; *Kluska v. Yeomans,* 54 Wash. 465, 103 Pac. 819, 132 Am. St. 1121; *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 17 P. (2d) 631." *Case v. Peterson,* 17 Wn. (2d) 523, 136 P. (2d) 192.

■ In instruction No. 13, the court explained to the jury the facts relative to the existence of the workmen's compensation act, and its provisions for compensating injured workmen and their families. The court then defined the meaning of the word "workman" as implied in the act. He told the jury that D'Amico's employer and appellants were engaged in extrahazardous occupations, and ended the instruction in the following language:

" 'An injury to an employee arises "in the course of his employment" when it occurs within the period of his employment at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it.'

"The test for determining whether an employee is, at a given time, 'in the course of his employment,' is whether the employee was, at the time engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.

"If, therefore, you find from a fair preponderance of the evidence that deceased Joseph D'Amico, at the time of his injury, was doing something incidental to his employment and in furtherance of the interests of his employer, then his widow and·his minor children must have recourse to the provisions of the Workmen's Compensation Act which accord relief to them, and your verdict must be for the defendants in this case.

"If, however, you find from a fair preponderance of the evidence that the deceased Joseph D'Amico, at the time of his injury was not engaged in the performance of the duties required of him by his contract of employment or by specific direction of his employer, then and in that event the plain-

tiff's right of action would not be barred by the Workmen's Compensation Act."

The instruction was entirely proper in that it clearly stated the law and defined the rights of the parties under that law.

 Proposed instruction No. 2 related to the questions included in instruction No. 13. We have examined the proposed instruction and find that its essence was included within the instructions given by the court.

Finding no error in the record, we affirm the judgment.

DRIVER, C. J., BEALS, MILLARD, BLAKE, and MALLERY, JJ., concur.

JEFFERS, J. (dissenting)—I am unable to agree with the conclusion reached in the majority opinion that D'Amico was not in the course of his employment at the time he was injured, and for that reason I dissent.

I accept the facts as set forth in the majority opinion and also the questions presented and the applicable statutes.

I also agree that this court has had before it but one case, namely, *Young v. Department of Labor & Industries,* 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171, where a workman was injured during the noon rest period, and wherein the rules applicable to such cases were stated. I am, however, unable to agree that the facts in the *Young* case are so similar to the facts in the instant case as to make the decision in the *Young* case controlling here.

It seems to me that the majority opinion entirely eliminates from our consideration of whether or not a workman is in the course of his employment during the rest period, the basic reasons stated in the general rule and in the cases holding that under certain conditions a workman is in the course of his employment during the noon rest period, when it states:

"Under our workmen's compensation act definite conditions must exist at the time of an injury in order to entitle one to the benefits of the act. First, the relationship of employer and employee must exist between the injured person and his employer (except in some cases where the injured

person is an independent contractor); second, the injured person must be in the course of his employment; third, that the employee must be in the actual performance of the duties required by the contract of employment; and, fourth, the work being done must be such as to require payment of industrial insurance premiums or assessments."

After discussing the *Young* case, *supra,* the majority opinion states: "Other decisions of this court supporting this conclusion are: . . ." Then follows a list of cases beginning with *Hoffman v. Hansen,* 118 Wash. 73, 203 Pac. 53, and ending with *Waddams v. Wright,* 21 Wn. (2d) 603, 152 P. (2d) 611.

All of the above cases, with the exception of the *Waddams* case, were decided prior to the *Young* case, and none of them involved the question here presented; in other words, they were not noon hour cases.

I think it will appear from the discussion to follow that not only in the *Young* case did this court recognize the general rule applicable to noon hour cases, but in other cases this court has stated that it is not essential to the right to receive compensation *that the employee should have been working at the particular time when the injury was received,* also stating that the employment is not limited to the *exact moment when he begins work or when he quits work.*

To illustrate what I have said and will say relative to the *Young* case, I desire to set out some statements made in the cited case not quoted in the majority opinion:

"The peculiarity of the case before us is that the accident happened during the *noon hour,* while appellant, *though not at work, nor under the supervision* of *his employer, nor receiving pay for that period,* was, nevertheless, on his employer's premises, and was engaged at the time of his injury in a personal exploration of a locality which he had not been forbidden to enter.

"We have no cases from this jurisdiction presenting that exact situation, but there are several which bear a more or less close analogy." (Italics mine.)

The opinion then cites and discusses the following cases: *Hama Hama Logging Co. v. Department of Labor & Indus-*

*tries,* 157 Wash. 96, 288 Pac. 655; *Carroll v. Western Union Tel. Co.,* 170 Wash. 600, 17 P. (2d) 49; and *Hill v. Department of Labor & Industries,* 173 Wash. 575, 24 P. (2d) 95. The opinion has this to say in regard to the opinion in the *Hill* case:

"The opinion, however, recognized the distinction between that case and those cases wherein persons within the protection of the act temporarily left the places of their employment for the purpose of performing some act of *necessity* or *convenience,* such as procuring *water or food.*" (Italics mine.)

The opinion in the *Young* case continues:

"Consulting the cases from other jurisdictions, we find many instances in which employees have been injured during meal hours *when they were not actually at work.* The *general rule* in such cases is that the injury is compensable if the employee was, at the time, *doing something incidental to the duties for which he was engaged,* but is not compensable if the injury resulted *from an independent act of the employee having no connection with his work or his meal.*" (Italics mine.)

The opinion then quotes the following statement from 71 C. J. 739, § 456:

" 'In accordance with the general rule that injuries to an employee while he is doing something not strictly within his obligatory duty but which is *incidental* thereto may be compensable, harm which befalls an employee may be compensable when it occurs to him during the *lunch period* or other meal period. However, harm sustained during a meal period may not be compensable as arising out of and in the course of employment *when the harm results from an independent act of the employee having no connection with his work or his meal,* or from the independent act of a third person, or when the harm is sustained by reason of the employee's placing himself in a more dangerous position than was required of him during the meal period, or where sufficient evidence that harm sustained during the meal period was an accident arising out of and in the course of the employment is lacking.' " (Italics mine.)

The opinion continues:

"The theory of the cases is that a *period of rest, refresh-*

ment, or other *temporary cessation from work, is not of it-self sufficient to break the continuity of employment,* but that *the independent act of the employee, which has no relation to the employer's interest,* serves to break the so-called nexus and to put the employee without the course of his employment.

"In this case, it is manifest that appellant's venture had no connection whatever with his meal. He was not seeking a place where he might eat, *nor was he returning to work from a place where he had eaten.* He had finished his lunch without any mishap *and had entered upon a wholly separate and distinct undertaking.* When he began his exploration of the interior of the dam, he was not under the supervision or control of his employer, but was on his own time. He was not then engaged in the performance of any of his obligatory duties or anything *incident* to them. He was not performing a task in furtherance of his employer's work or interest, but *was engaged in a voluntary exploration of his own conception."* (Italics mine.)

I desire to again call attention to *Hill v. Department of Labor & Industries, supra,* referred to in the *Young* case, and particularly to the following statement and quotation found in the *Hill* case:

"Respondent invokes the doctrine enunciated by the supreme court of Illinois in the case of *Rainford v. Chicago City Ry. Co.,* 289 Ill. 427, 124 N. E. 643, to the effect that:

" 'That which is *reasonably necessary* to the *health* and *comfort* of the employee, although personal to him, is *incidental* to the employment and service.'

"*With this doctrine we are in accord,* but it does not apply to a matter such as the mailing of a letter, which is wholly foreign to the employment upon which the person injured is engaged, and *necessary neither to his health nor physical comfort."* (Italics mine.)

While under the facts in that case, this court held that Hill was not in the course of his employment at the time he was injured, we cited with approval the rule announced in the *Rainford* case.

In the instant case, respondent, apparently recognizing the general rule as applied to noon hour cases and as stated in the *Young* case, *supra,* contends that the facts in this case bring it within what may be termed an exception to the

general rule, that is, that at the time he was injured, D'Amico was on *an independent venture of his own,* in no way connected with his work or meal.

I am of the opinion that the facts in the *Young* case are so different from the undisputed facts in the instant case that the decision in the *Young* case is not controlling here. However, I am of the opinion that the general rule, as stated in the *Young* case and other noon hour cases, is such as to almost compel a holding that, under the facts in the instant case, it must be held as a matter of law that D'Amico, at the time he was injured, was in the course of his employment.

In the instant case, it is apparent that the employees on this job, having only thirty minutes for the noon rest period, could not go very far from their work to eat their lunches, and it must have been contemplated by both the employer and the employees that the workmen would eat their lunches at some place near their work. It is true, of course, that in this case the employees could not and did not eat their lunches on the premises of their employer, but, in my opinion, that is not such a necessary element as to prohibit a holding that D'Amico was in the course of his employment.

In the instant case, all of the employees ate their lunches within a few feet of their place of work, at places which in my opinion were no more subject to danger than was their place of work.

It does not appear that D'Amico, after he had finished his lunch, went on any *independent venture of his own,* but he merely walked over to the curb to a place some ten or fifteen feet from his place of work, where again he was in no more dangerous position than he was while working or at any time during the rest period, and was apparently waiting for the time when he was required to go back to work. The place to which he had gone and where he was standing was not out of the course which might reasonably have been taken by him in returning to his work from the place where he had been eating his lunch.

I appreciate that an injury may be received by a workman, whether on or off the employer's premises, as the result of the act of some third person, which injury, under the

particular facts, may be found not to be an industrial injury. Such a situation, in my opinion, is illustrated by the case of *Blankenship v. Department of Labor & Industries,* 180 Wash. 108, 39 P. (2d) 981, cited in the majority opinion; but that case is, in my opinion, easily distinguished from the instant case, in that Blankenship left his place of employment to talk with one Perkins, a third party having nothing to do with Blankenship's employment, and, after some conversation between these men, Blankenship started back to work and was shot and killed by Perkins. It is evident that Blankenship's death in no way resulted from a hazard of his employment, but that his injury and death resulted from something which could not have been anticipated by the employment.

The same general distinction may be made in regard to the cases cited by respondent (not referred to in the majority opinion) under her contention that the injury, in the instant case, was caused by a risk common to the public. It may be admitted that the cases cited by respondent, among which are *Southern Surety Co. v. Galloway,* 89 Okla. 45, 213 Pac. 850, and *De Porte v. State Furniture Co.,* 129 Neb. 282, 261 N. W. 419, held that, under the facts in those cases, the claimants had gone on to the sidewalk or street from their places of employment and by so doing had made themselves a part of the general public, and were therefore no more entitled to protection under the act than any other member of the public.

The difference in the factual situations presented by the cases cited by respondent and those in the instant case is that, in the instant case, the place of D'Amico's employment was subject to all the hazards of the highway, and such hazards must have been contemplated in the contract of employment. D'Amico, during the noon rest period, did not go any place or do anything which increased the hazards surrounding his place of work.

While, as hereinbefore stated, the *Young* case is the only noon hour case decided by this court, we have, in line with the decisions from other jurisdictions, passed upon the question of whether or not a workman was in the course of his

employment at the time he was injured, and we have held as a *question of law* that such a workman was or was not in the course of his employment, under the facts in the particular case. See *Hobson v. Department of Labor & Industries,* 176 Wash. 23, 27 P. (2d) 1091; *Wood v. Chambers Packing Co.,* 190 Wash. 411, 68 P. (2d) 221; *Clausen v. Department of Labor & Industries,* 15 Wn. (2d) 62, 129 P. (2d) 777; *Leary v. Department of Labor & Industries,* 18 Wn. (2d) 532, 140 P. (2d) 292.

In the *Clausen* case, *supra,* we stated:

"As already stated, the joint board held that Clausen did not come within the terms of the statute, and denied the claim of the widow. As the facts in this case are not disputed, and the *question is solely one of law* to determine the relationship which arose, the rule that the department's decisions are *prima facie correct* has no application." (Italics mine.)

In the *Leary* case, *supra,* we again stated:

"The only question before this court, then, is whether or not Mr. Leary, in going out and getting his car for the purpose of pushing the Dunn car away from the gate, was, while so doing, in the course of his employment. *The facts in the case being undisputed, the only question is whether or not the law was properly applied to the facts."* (Italics mine.)

See, also, from other jurisdictions, *Williams v. State Compensation Commissioner,* 114 W. Va. 37, 170 S. E. 775; *Krause v. Swartwood,* 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611; *Tingey v. Industrial Accident Commission,* 22 Cal. (2d) 636, 140 P. (2d) 410.

I have cited the cases in the group last above referred to for the reason that respondent, in her brief, makes some contention that the question of whether or not D'Amico was in the course of his employment at the time he was injured, is one for the jury.

At this point, I desire to call attention to some of our own cases. While they are not noon hour cases, I think they throw some light on one of the elements which the majority opinion holds must be present before it can be

held that a workman was in the course of his employment at the time he was injured, namely, that D'Amico, at the time he was injured, was not actually engaged in doing the work he was employed to do.

In *Brown v. Department of Labor & Industries,* 135 Wash. 327, 237 Pac. 733, it appears that the workman, after he had ceased work at four p. m., was killed on his way home and when about four miles from the place of his employment. In the cited case, while this court denied the claim for compensation made by the widow, we stated:

"We think it can be safely said that ordinarily when an employee is injured while traveling the public road on his way to or from his place of work by conveyances not furnished by the employer, and he is not to be paid for the time consumed in going to and coming from his work, and at the time of his injury *he is not on or in the immediate proximity of his employer's premises,* the injury does not arise *out of the employment,* under the terms of our statutes. But there are a number of cases holding that the employment is not limited to the *exact moment of arrival at the place of work nor to the moment of departure therefrom.*" (Italics mine.)

It may be doubted that the above phrase "out of the employment" was properly used in the cited case, in view of the fact that the statute then in force, Rem. Comp. Stat., § 7675, like the present statute, did not use the term "out of employment" but "in the course of his employment," and the courts seem to recognize that the term "in the course of his employment" may be given a more liberal interpretation than the term "arising *out of* and in the course of his employment."

*Bristow v. Department of Labor & Industries,* 139 Wash. 247, 246 Pac. 573, was a case in which the working hours of the employee were from eight to twelve a. m., and from one to five p. m. On the morning he was killed, Bristow punched the time clock at 7:25 a. m., after which he took a course along the premises of his employer, going through the portion of the plant where his daily work was performed, and then toward a dam belonging to the company, the dam being located about four hundred feet from the building where he

worked. On his way he met two fellow-employees, whom he told he was going fishing. Thereafter he was never seen alive. His body was recovered about seventy-five feet below the dam. The widow filed a claim with the department, which claim was denied and on appeal was taken to the superior court, where, after the trial, the court reversed the action of the department and gave judgment for the widow. The department appealed to this court, contending that Bristow was not in the employment of any employer. In affirming the judgment of the lower court, we stated:

"This question is not without some difficulty. It will not do to lay down a hard and· fast rule *that an employee who arrives at his place of work thirty-five minutes before the time contemplated to commence the actual labor under his employment is not a workman until the whistle sounds; nor can it be said just how long a time the employee may be permitted upon the plant before the whistle blows.* There are many facts and circumstances, which might make the time in one case very unreasonable, while, in another, it would be quite reasonable. . . . *Can it be said, then, as a matter of law, that, having arrived at the plant thirty-five minutes before the usual working time, a time barely sufficient to have repaired a puncture* [if he had had one], *and then gotten to his place of work before the whistle sounded, that his arrival was so premature that he should not be considered an employee?* We think not." (Italics mine.)

The case of *White v. Shafer Bros. Lbr. & Door Co.*, 165 Wash. 298, 5 P. (2d) 520, 8 P. (2d) 1119, was commenced by White to recover from the defendant company for personal injuries claimed to have been received as the result of the negligence of the company. Defendant pleaded that the plant was engaged in an extrahazardous industry; that White was then in its employ and was engaged in extrahazardous employment; that he was injured in the course of such employment; and that therefore he was entitled to relief, if any, only under the workmen's compensation law. The cause proceeded to trial with a jury. At the conclusion of White's evidence, the defendant moved for judgment of dismissal upon the ground, among others, that White, at the time in question, was "an employee protected by the work-

men's compensation act." This motion was granted, and judgment of dismissal entered, from which White appealed. This court stated the question to be considered as follows:

"So, our present problem is, was White injured *in the course of his employment?* If he was so injured, *then he can look for relief only to the accident fund provided by our workmen's compensation law.*" (Italics mine.)

In the cited case, the court quoted from the case of *Indian Hill Club v. Industrial Ins. Commission,* 309 Ill. 271, 140 N. E. 871, as follows:

" 'It is not essential to the right to receive compensation that the employee *should have been working at the particular time when the injury was received.* The employment is not limited to the *exact moment* when he *begins work or when he quits work.* [Citing authority.]' " (Italics mine.)

The opinion in the *White* case continues:

"That decision seems to us to be directly in point in our present inquiry. In harmony with that decision, we have held that it is not necessary that an employee in an extrahazardous employment must necessarily be *actually at work,* when injured, in order to be considered as 'injured in the course of his employment;' that is, his injury may be so intimately related to his employment as to call for the holding that he was 'injured in the course of his employment,' *though not then actually at work or within his actual working hours.* [Citing authority.]" (Italics mine.)

I have cited the cases last above referred to only for the purpose of showing that, prior to the *Young* case and in cases not involving a noon hour rest period, we have held that it was not necessary that the employee be actually at work at the time he was injured, in order to be considered as injured in the course of his employment. I am unable to agree that the statements made in the three cases last cited are mere *obiter dicta.*

I may also state here that we held in *Pearson v. Aluminum Co. of America,* 23 Wn. (2d) 403, 161 P. (2d) 169, that the employee was in the course of his employment when injured, notwithstanding that at the time of such injury he was not on the *employer's premises, was receiving no pay for the*

*time he was being transported to and from his work, and regardless of the fact that the employer did not report to the department the time consumed in such transportation.*

It is true the case last cited is what may be termed a transportation case, but the theory upon which it is held in such cases that the employee is in the course of his employment is that the act of transportation is *an incident of the employment,* because of mutual benefit to both employer and employee in facilitating the progress of the work.

It is likewise the theory of the noon hour cases that, under certain conditions, the noon hour rest period is *incidental to the employment,* and that a period of rest, refreshment, or other temporary cessation of work is not of itself sufficient to break the continuity of employment, but that an independent act of the employee, which has no relation to the employer's interest, serves to break the so-called nexus and to put the employee without the course of his employment.

*Waddams v. Wright,* 21 Wn. (2d) 603, 152 P. (2d) 611, cited in the majority opinion, is not a noon hour case, but is one in which the employee was injured after he had finished his day's work and was on his way to the bunkhouse for a shower. He was injured while walking along a sidewalk beside the road, as he neared the bunkhouse. It is my opinion that cases of this character are not decisive of or controlling in cases like the instant case.

The general rule as announced in the *Young* case, *supra,* is quite generally recognized, as is what we may term the exception, namely, that the rule is not applicable to a workman injured during the noon hour rest period when such workman at the time is engaged in some independent venture of his own, in no way connected with his employment or his meal.

As stated in *Zurich General Accident & Liability Ins. Co. v. Brunson,* 15 F. (2d) 906, each case must rest upon its own peculiar facts. Our statute, which provides only that the injury be received "while in the course of his employment," is different from the statutes of many of the states, which provide that the injury be one *"arising out of* and in the course of employment." In other words, our statute does

not require the causal connection between the employment and the injury which would seem to be required under some of the statutes. For a discussion of this question, see 15 Wash. L. Rev. 120.

The difference in the statutes has undoubtedly affected the decisions. I quote from *Hale v. Savage Fire Brick Co.,* 75 Pa. Super. Ct. 454:

"Our Supreme Court has pointed out in the clearest of language that our Workmen's Compensation Act differs from that in force in most other states in this country and in England, in that it does not require that the accident resulting in injury must *'arise out of the employment'* but only that it occur *'in the course of the employment'* . . . In most other jurisdictions both elements must be present, viz: the accident must arise (1) out of and (2) in the course of the employment.

"This makes all the difference in the world in considering an injury resulting from accident in circumstances such as are shown in the present case." (Italics mine.)

Quoting further from the cited case:

"Following the language used with approval in *Dzikowska v. Superior Steel Co.,* 259 Pa. 578, this court has already held in *Blouss v. D., L. & W. R. R. Co.,* 73 Pa. Superior Ct. 95, that a workman's *employment* is not broken by a short interval of time taken for the noon-day meal [in this case thirty minutes], where he remains on the employer's premises (unless he is doing something that is wholly foreign to his employment), and that in such circumstances he is still engaged in the furtherance of the business or affairs of the employer. 'Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, *though they are only indirectly conducive* to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food or fresh air or to rest in the shade.' " (Italics mine.)

In the cited case, the appellant contended that the rule did not apply to a definite lunch hour, but only to food eaten during a moment of leisure snatched from work. The court held the rule was not generally so construed.

See, also, *In re Sundine*, 218 Mass. 1, 105 N. E. 433, wherein the statute under consideration provided that the injury must arise "out of and in the course of" the employment. Yet the court held that claimant's employment was not suspended at the time she was injured while on her way to lunch. The accident in the cited case occurred on stairs not under the control of the employer, the court holding it was a necessary incident of the claimant's employment to use these stairs.

It then becomes necessary in the case at bar to determine whether, under all the facts, D'Amico, at the time he was injured, was in the course of his employment, under the general rule as announced in the *Young* case, *supra*. D'Amico was engaged in hard work, operating a drill, breaking the pavement. The place where he was working was on the highway, and therefore it seems to me the hazards of the street were incidental to his work, distinguishing this case in that respect from many of the cases cited by respondent, some of which are referred to in the majority opinion. While the workmen were under no duty to eat a lunch or to eat it at any certain place, it was the custom for them to bring their lunches and to eat them near the place where they were working along Airport way. In view of the short work stoppage of thirty minutes, it was practically impossible for them to do otherwise. This practice, then, it seems to me was within the reasonable contemplation of the parties concerned. This was not only for the benefit and interest of the employees, but also for the benefit and interest of the employer, and was incidental to the employment. The work being done by D'Amico necessitated a rest period.

It is my opinion that there is nothing in the record indicating that, at the time of the accident, D'Amico had entered upon a *separate and distinct undertaking of his own*, not connected with his employment, as was found to be the situation in the *Young* case.

I do not desire to be understood as contending that D'Amico was in the course of his employment merely because of the fact that only five minutes or less remained of the rest period; but it is my opinion that, when all the facts in the case are considered, it becomes the duty of this court to hold as a matter of law that D'Amico, at the time he was injured, was in the course of his employment under the general rule announced in the *Young* case, *supra,* and other authority cited.

I am of the opinion that it is not necessary to such a holding that the injury be received on the premises of the employer, or that the workman be paid for the time consumed in the rest period, or that the employer in making his report to the department of labor and industries, report the time consumed in the rest period. See *Pearson v. Aluminum Co. of America,* 23 Wn. (2d) 403, 161 P. (2d) 169.

For the reasons stated, I am of the opinion that D'Amico was in the course of his employment at the time he was injured and that this action will not lie against appellants, and therefore the judgment entered on the verdict should be reversed and the cause remanded with instructions to the trial court to dismiss the action.

STEINERT and ROBINSON, JJ., concur with JEFFERS, J.

---

May 2, 1946. Petition for rehearing denied.